McCALEB, Justice.
 

 On May 13, 1942, John S. Waterman, Jr., initiated this petitory action in the Twenty-Fifth Judicial District Court, in which he claims that he is the tru'e and lawful owner of an undivided one-fourth right, title and interest in and to the following described property in Plaquemines Parish:
 

 Sy2 of Section 14,
 

 S% of Section 15, N. of Spanish Pass,
 

 SE% of Section 20,
 

 Ny2 and SW.1/4 of Section 21, W. of Spanish Pass,
 

 
 *595
 
 SE% and SWJ4 of Section 24, East of Red Pass, less % interest in that portion East of Tonphine Pass,
 

 Ni/2 of NE14 of Section 29,
 

 NE14 of Section 24, East of Red Pass, less % interest in that part East of Tonphine Pass,
 

 Section 25, East of Red Pass, except that part East of Tonphine Pass,
 

 Section 26, East of Red Pass,
 

 Section 35, East of Red Pass, Section 36,
 

 All in Township 21 South, Range 30 East.
 

 He joined as defendants Rectangle Ranche Company (hereinafter referred to as Rectangle), Dr. Ade B. Pautscle, Claude L. Johnson and Tidewater Associated Oil Company, alleging that they are in actual physical possession of the property without any right or title whatsoever. Subse-' quently, the National Royalties Corporation and John Vaccaro intervened, as parties plaintiff, alleging ownership of
 
 %e
 
 and %, respectively, of the minerals under the land.
 

 Thereafter, the defendants appeared and filed exceptions of vagueness which were based on the ground that plaintiffs had not alleged the chain of title upon which their claims were founded. These exceptions were never tried. However, after three years had elapsed, viz., on May 22d, 1945, plaintiffs filed supplemental and amended petitions in which they not only alleged the muniments of title and other instruments upon which they claimed the property blit also set forth the chain of title under which the defendants held possession. A few days later, on June 5, 1945, Tambour Corporation, claiming ownership of an undivided one-half interest in the land, filed a separate action in the court based upon the same muniments of title as those of Waterman and the intervenors in his suit. In its petition, Tambou'r joined the same defendants named in the Waterman suit and, in addition thereto, Herbert J. Harvey, Donald L. Madden, Harry P. Gamble Jr. (later dismissed for lack of interest), H. L. Carnahan, John E. Jackson and Baldwin J. Allen.
 

 The objections contained in their exceptions in the Waterman suit having been satisfied by the supplemental and amended petitions, defendants joined issue in both cases by answers in which they denied the claims of plaintiffs and affirmatively alleged the validity of their respective titles and possession thereunder. In due course, the cases were consolidated for trial and, after hearing and submission, the demands of all plaintiffs were rejected by separate judgment in each case. Appeals have been prosecuted by all those adversely affected and the cases have been here consolidated again for our decision.
 

 The property in dispute is located in the Parish of Plaquemines in Township 21 S., Range 30 E., in the Southeastern Land District of Louisiana, west of the Mississippi river and is contained within Sections
 
 *597
 
 14, 15, 20, 21, 24, 25, 26, 29, 35 and 36, as hereinabove described.
 

 Plaintiffs’ main chain of title, which has been referred to as the “Lacey” title, is as follows: Buras Levee Board to Lacey, January 4, 1896; Lacey to Buck, same date; Buck to Rectangle, October 23, 1905; Rectangle to Rose, January 11, 1923 and Rose to plaintiffs by a series of conveyances which are neither questioned nor important.
 

 Defendants’ chain, referred to as the “Leovy” title, is as follows: State to Leovy by patents issued in 1893 and subsequent years; heirs of Leovy to Hayne, November 17, 1905; Hayne ' to Kranebell, November 3, 1913; Kranebell and wife to Rectangle, February 4, 1927, and Rectangle to Johnson, Pautsch and other defendants of various interests, including a mineral lease acquired by Tidewater Associated Oil Company, by a series of transactions not important to the controversy.
 

 Since this is a petitory action, plaintiffs must recover on the strength of their own title and not on the weakness of that of their adversaries. Code of Practice, Article 43, 44; Dugas v. Powell, 197 La. 409, 1 So.2d 677; Simmons v. Carter, 186 La. 377, 172 So. 425.
 

 Plaintiffs’ primary contention is that, since the land claimed is embraced within T. 21 S., R. 30 E., they own it because their author in title, Emile J. Rose, acquired all of the land in that township by deed from Rectangle on January 11, 1923. The pertinent part of the deed from Rectangle to Rose reads as follows:
 

 “That the said party of the first part, for and in consideration of the sum of
 
 one dollar ($1.00) and other good and valuable
 
 consideration
 
 [1]
 
 in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, and the said party of the second part forever released and discharged therefrom, has remised, released, sold, conveyed, and quit-claimed, and by these presents.does remise, release, sell, convey and
 
 quit claim
 
 unto the said party of the second part, his heirs and assigns
 
 forever,
 
 all the right, title, interest, claim, and demand which said party of the first part has in and to the following described piece of land, situated in the Parish of Plaquemines, County of - and State of Louisiana, and known and described as follows, to wit: ‘All the land in the Parish of Plaquemines, in the State of Louisiana, being all the land in Township Twenty-one (21) South, Ranges Twenty-nine and Thirty (29 & 30) East, in the Southeastern Land District of Louisiana, West of the Mississippi River, comprising an area of 46,060 acres more or less, except Lots 1, 2, 3, and 4, in Township
 
 *599
 
 Twenty-one (21) South, Range Thirty (30) East, containing 109.05 acres, and also excepting 320 acres lying in the rear of said Lots 1, 2, and 3, which were sold'by the State of Louisiana to C. C. Packard, by Patent Number 526 dated September 30, 1869; being the same lands which were acquired by said Rectangle Ranche Company, from Chas. C. Buck on Oct. 23rd., 1905 by Act of Sale passed before Louis A. Hubert, Notary Public, in New Orleans, Louisiana, and recorded in the Parish of Plaquemines, State of Louisiana, in C. O. Book No. 39, Folio 812, and in Book P. No. 188, Folio 470 of Conventional Mortgages; and being a portion of the lands which were granted by Act No. 18 of the Session of 1894 of the General Assembly of the State of Louisiana to the Board of Commissioners for the Buras Levee District; and being a portion of the lands conveyed by the said Board of Commissioners for the Buras Levee District to Jas. D. Lacey, and a portion of the lands conveyed by the said Jas. D. Lacey to Chas. C. Buck, both of said latter conveyances having been made by Acts of Sale passed before J. C. DeArmas, Notary Public, at Buras, Louisiana, on January 4th., 1896’ — with the exception of the South East Quarter (S.E.%) of the South East Quarter (S.E.}4) of Section Twelve (12) Township Twenty-one (21) South, Range Thirty (30) East.
 

 “To have to hold the same, together with all and singular the appurtenances and privileges thereunto belonging, or in any wise appertaining thereunto; and all the estate, right, title, interest, and claim whatever, of the said party of the first part, either in law or equity, to the only proper use, benefit and behoof of the said party of the second part, his heirs and assigns forever.”
 

 Defendants maintain that the deed does not convey the land in suit (this land is particularly described in the “Leovy” chain of title under which defendants claim); that the description would be considered too vague to identify any particular lands whatever were it not for the special reference in the deed to the acquisitions of Rectangle, its vendor Buck, Buck’s vendor Lacey and Lacey’s vendor, the Board of Commissioners for the Buras Levee District; that a perusal of these deeds will show that the only land acquired by Lacey from the Board of Commissioners in Township 21 S. R. 30 E. was the first 12 sections thereof; that no other land within that Township subsequently inured to the Buras Levee District under the provisions of Act No. 18 of 1894; that such land could not inure, as it was “sovereignty” land and that, accordingly, Lacey did not and could not transfer the land in controversy to Buck and the latter did not and could not convey to Rectangle and so on.
 

 In answer to this contention, plaintiffs submit (1) that the description in the Rectangle-Rose deed is sufficient and includes the land in contest; (2) that the title ac
 
 *601
 
 quired by Rose from Rectangle is valid; (3) alternatively, that defendants are es-topped to deny that Rectangle had a valid title which passed to Rose; (4) that, even if Rectangle did not have a good title, the title which it acquired from Mr. and Mrs. Kranebell in 1927 (under which all defendants claim) inured to the benefit of Rose under the doctrine of after-acquired title; (5) that, moreover, the title acquired by Kranebell from Hayne, his vendor, was nothing more than a security title since Hayne’s acquisition from the Leovy heirs created an antichresis and that Rectangle was the holder of the equitable title and (6) that, at all events, Rose and his successors have a good title by the ten year acquisitive prescription.
 

 We shall discuss the various contentions and counter-contentions in order. Preliminarily, let us consider the nature of the deed from Rectangle to Rose — that is, whether that deed conveyed any land to Rose or whether it merely quitclaimed whatever right, title and interest Rectangle may have had in and to the property described therein.
 

 The deed recites in substance that the party of the first part has “remised, released, sold, conveyed, and quit-claimed, and by these presents does remise, release, sell, convey and Quit Claim * *
 
 *
 
 all the right, title, interest, claim and demand which said party of the first part has in and to the following described piece of land * * Obviously, the declarations do not convey the land but only the right, title and interest of the vendor. It is in the nature of an assignment of a right or an interest and as such falls squarely within the category of the common law quitclaim deed. Examination of our Civil Code discloses the absence of provisions relative to quitclaim deeds. The articles on sales of property and the obligations and rights resulting therefrom do not mention quitclaim deeds; Articles 2500 through 2504 respecting the warranty of the seller being confined to treatment of sales with warranty, express and implied, and those where warranty is specifically excluded. On the other hand, quitclaim deeds are fully recognized in the jurisprudence and have many times been considered by our courts. 26 Corpus Juris Secundum, verbo, Deeds, § 8, page 181, defines a quitclaim deed as follows:
 

 “A quitclaim deed is one which purports to convey, and is understood to convey, nothing more than the interest or estate in the property described of which the grantor is seized or possessed, if any, at the time, rather than the property itself.”
 

 The authorities from the Federal courts and the courts of other states are that, in determining whether a deed is a quitclaim or not, reference must be made to the language used therein for the purpose of ascertaining the intention of the parties. Williams v. Rabb, Tex.Civ.App., 161 S.W.2d 121. The fact that the deed is denominated a quitclaim is not conclusive
 
 *603
 
 (Wise v. Watts, Ariz., 239 F. 207, 152 C.C.A. 195; Cook v. Smith, 107 Tex. 119, 175 S.W. 1094, 3 A.L.R. 940), nor does the fact that the words “bargain and sell” are used necessarily imply that the grantor is absolute owner and that he is not merely quitclaiming his right, title and interest. Brown v. Harvey Coal Corporation, D.C.E.D. Ky., 49 F.2d 434; Young v. Clippinger, 14 Kan. 148. Examination must be had of all of the recitals contained therein in an effort to resolve the true intent. Here, we think, as above stated, that the recitals are clear and show merely a transfer of the interest of Rectangle in two townships and do not convey any property.
 

 On the other hand, the title to real property may be as effectually transferred by quitclaim as by any other form of conveyance. But such a deed conveys only such title or interest that the grantor had at the time it is given “and excludes any implication that he has any title .or interest.” 26 C.J.S., Deeds, § 118, page 415. Nevertheless, it is established in Louisiana that a quitclaim deed is sufficient to support the ten year acquisitive prescription provided by Article 3478 of the Civil Code. See Smith v. Southern Kraft Corp., 202 La. 1019, 13 So.2d 335 and cases there cited.
 
 [2]
 

 This jurisprudence is to be regarded as an exception in favor of a good faith possessor holding under a quitclaim deed for, as a matter of fact, a conveyance of the vendor’s title and interest in prop
 
 *605
 
 erty does not convey the property itself. Albeit, the purchaser is put on immediate notice that he is not acquiring land but merely the interest of his vendor in the land. And, while it may be appropriate to say that the • purchaser in good faith may use the conveyance to support title by prescription, he cannot otherwise acquire more than the interest conveyed. Thus, the title examiner is alerted, when confronted with such a deed, to delve further to ascertain the interest of the vendor in order to know the exact property which is embraced in the conveyance.
 

 With these principles in mind, we approach a discussion of the title upon which the plaintiffs rely. Manifestly, Rose acquired whatever interest Rectangle had in and to all the land in Township 21 S. Ranges 29 and 30 E., comprising an area of 46,060 acres, more or less, except 429 acres which were specially excluded. What v;as Rectangle’s interest? In the deed, it is stated that these are the same lands which Rectangle acquired from Buck in 1909; also that they are a portion of the lands which were granted by Act No. 18 of 1894 to the Buras Levee District and a portion of the lands conveyed by the Board of Commissioners of that District to Lacey, who conveyed them to Buck. The description contained in the act of sale from Buck to Rectangle, dated October 23, 1905, is as follows:
 

 “All the land being in Plaquemines Parish State of Louisiana on the right bank of the Mississippi River, about Eighty five (85) miles below the City of New Orleans, described as follows,
 

 “All the land in Township Twenty-one (21) South Ranges Twenty-nine and Thirty (29 & 30) East in the Southeastern Land District Louisiana West of the Mississippi River, with the exception of lots 1, 2, 3 and 4, in Township 21 S. Range 30 E. which said lots contain 109.05 acres, according to the official plats of survey thereof made by the U. S. Government to which lots this vendor has no title, and also' excepting the Three Hundred and Twenty acres (320) lying immediately in the rear of said Lots 1, 2 and 3 which were sold by the State of Louisiana to C. C. Packard by patent No. 526, .dated Sept. 30th, 1869.
 

 “None of the lands in these two Townships have ever been surveyed with the exception of said lots 1, 2, 3 and 4, but the north boundary 12 miles (or more) long.
 

 “The west boundary 6 miles long and the south boundary of the western most Township i e T. 21 S.R. 29 E. have all been officially fixed by survey by authority of the U. S. Government.
 

 “The starting point of the East boundary of T. 21, S.R. 30 E. has also been fixed by the same authority, the completed area is in excess of Forty six thousand and eighty acres (46,080).
 

 “Although no survey of the land has ever been made adverse title is claimed to
 
 *607
 
 3,920 acres or less in T. 21 S.R. 30 E. and 4020 acres or less in T. 21 S.R. 29 E. in fractional subdivisions of section according to the official plat of survey thereof on file in the State Land office of Louisiana. Suit to set aside such adverse claim is now pending in the U. S. Circuit Court of the Eastern District of La. No. 13330.
 

 “This vendor’s title descends to him by chain of title from the State of Louisiana, which by act of the General Assembly No. 18 of the session of 1894, granted the said lands together with much adjoining lands to the Board of Commissioners for the Buras Levee District and the said Board of Commissioners for the Buras Levee District conveyed six townships, being the two above described, and four other adjoining by act of sale on Jan. 4th, 1896 before J. C. deArmas, Notary Public at Bur-as, La. to Jas. D. Lacey and on the same day the said Jas. D. Lacey conveyed the whole of said six townships, including the two hereby sold to the vendor by act of sale before the same Notary Public.
 

 “This vendor conveys the said lands, above described i. e. All of T. 21 S.R. 29 and 30 E. excepting 429.05 acres, with full warranty except as to the 7,940 acres or less adversely claimed as set out above to which he sells only his right, title and interests but expressly reserves warranty.”
 

 The recitals of the deed make it clear that, whereas Buck was claiming all of the land in Township 21 S., Range 30 E., there were outstanding adverse titles to fractional subdivisions of that land and it is further stated that Buck had brought a suit to set aside such adverse claims. Under the circumstances, Buck was unwilling to warrant title to those lands which were adversely claimed and he therefore transferred only his right, title and interest, expressly reserving warranty. It is conceded by plaintiffs that the lands in contest are part of the property adversely claimed by the Leovy heirs under patents from the State. Hence, Rectangle acquired only such interest as Buck had in and to those lands. What was his interest?
 

 Buck, as aforesaid, acquired from Lacey the same lands which the Board of Commissioners of the Buras Levee District had earlier on the same day (January 6, 1896) deeded to Lacey. The pertinent part of the description of the transfer from the Levee District to Lacey reads as follows:
 

 “All those lands now belonging to or which may hereafter inure to the Board of Commissioners for the Buras Levee District under the provisions of act No. 18 of the General Assembly of the State of Louisiana passed at the regular session of the year 1894 * * * and included within the limits of * * * Township Twenty-one (21) S., Range thirty (30) East * *
 

 The record reveals that the' only-lands included within Township 21 S., Range 30 E., acquired by the Levee Board
 
 *609
 
 were Sections 1 to 12 inclusive as these were the only lands deeded to the Levee Board by an act of conveyance from the Auditor and Registar of the State Land Office, as required by the provisions of Act No. 18 of 1894. See State v. Aucoin, 206 La. 787, 20 So.2d 136, and authorities there cited holding that, according to provisions in statutes creating the several levee districts throughout the State, the title to the lands conveyed in general terms did not pass to the board of Commissioners of the levee district until an instrument of conveyance would be signed by the State Auditor and the Register of the State Land Office and be recorded in the conveyance records of the parish where the land described in the instrument is situated. Moreover, it is clearly shown in this case that the lands in controversy are “sovereignty” lands (see State v. Buck, 46 La.Ann. 656, 15 So. 531) and, therefore, never belonged to and were not acquired from the Federal government. Hence, such lands could not pass to the Levee Board under Act No. 18 of 1894. See State ex rel. Board of Commissioners v. N. A. Baker, 146 La. 413, 83 So. 693.
 

 Inasmuch, therefore, as the Levee Board obtained no title whatever to the lands in contest, neither Lacey, Buck nor Rectangle acquired a title to them under the subsequent conveyances and it follows that Rose did not get title by acquiring Rectangle’s interest in T. 21 S., R. 30 E. in 1923.
 

 It is therefore apparent that plaintiffs cannot succeed unless one of their alternative contentions can be maintained. The first one of these contentions is that defendants are estopped to deny that Rectangle had a valid title which passed to Rose. This point is without merit. Title to real estate cannot be acquired by estoppel (see Pan American Products Co. v. Robichaux, 200 La. 666, 8 So.2d 635), although the doctrine may be employed for the purpose of prohibiting a grantor from denying that an after-acquired title passed by the original conveyance. See 31 Corpus Juris Secundum, verbo Estoppel, § 21, page 203; Standard Oil Co. v. Allison, 196 La. 838, 200 So. 273 and Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 633.
 

 This leads us to a discussion of plaintiffs’ principal alternative contention — viz., that, even though Rectangle did not have a title to the land in controversy when it sold its interest in the two townships to Rose in 1923, its subsequent acquisition of the property from Mr. and Mrs. Kranebell in 1927 inured to the benefit of Rose under the doctrine of after-acquired title.
 

 The doctrine of after-acquired title is recognized in the jurisprudence of this state but, heretofore, its application has been limited to cases where the vendor warranted title to the conveyed property. See Wells v. Blackman, 121 La. 394, 46 So. 437; Standard Oil Co. v. Allison, supra, and Jackson v. United Gas Public Service Co.,
 
 *611
 
 supra.
 
 [3]
 
 It is easy to see why one, who sells with warranty, becomes estopped from thereafter acquiring a title to the prejudice of his grantee. To hold that the title he acquires inures to his grantee is really nothing more than an enforcement of the grantor’s obligation to deliver a good title. And it may even be proper to extend application of the doctrine to a sale without warranty where the land conveyed is adequately described. In such a case, it might be argued that the vendor would be precluded from subsequently acquiring an adverse title to the prejudice of the vendee under Article 2504 of the Civil Code, which declares that:
 

 “Although it be agreed that the seller is not subject to warranty, he is, however, accountable for what results from his personal act; and any contrary agreement is void.”
 

 See also Articles 2503 and 2505.
 

 On the other hand, it is quite manifest that the doctrine of after-acquired title should not be expanded to include a quit-claim deed, primarily for the reason that a conveyance of that character transfers only the present interest of the vendor in the land and does not convey the property. It is generally accepted by the leading authorities (see 16 American Jurisprudence Verbo “Deeds” Section 344; Chesney v. Valley Live Stock Co., 34 Wyo. 378, 244 P. 216, 44 A.L.R. 1266; 162 A.L.R. 566 and 31 Corpus Juris Secundum Verbo, Estoppel, § 22, page 205) that there is no basis for the application of the doctrine of after-acquired title where the vendee is claiming under a quitclaim deed. And this Court, in Benton v. Sentell, 50 La.Ann. 869, 24 So. 297, 301, in distinguishing the quit-claim deed from an act of sale, remarked that it “reaches only to interests actually owned at that time by the party executing it * * This being so, there is no reason why the vendor should not thereafter acquire title even though it be adverse to the vendee holding under the deed.
 

 In support of the proposition that the doctrine of after-acquired title is applicable to this case, plaintiffs rely heavily upon the decision in Rapp v. Lowry, 30 La.Ann. 1272. In that matter, Rapp brought a petitory action against Lowry to recover 160 acres of land which he claimed under a tax sale dated December 14th 1872 (sold for taxes of 1871, assessed to an owner “unknown”). Previously, on April 13, 1870, Rapp had sold and conveyed to Lowry his claim and interest in and to the lands. The court found that the tax sale of 1872 was void and that, therefore, he had no title whatever. Notwithstanding this, the court went on to say that, even if the tax sale was otherwise valid, Rapp would not be permitted to recover as
 

 “It is shocking to morals, and to common honesty and decency, it cannot be tolerated in law, that a vendor, even without warranty, should subsequently acquire a title superior to that which he conveyed to his ven
 
 *613
 
 dee, and attempt to oust his vendee under that title.”
 

 Apart from the fact that the foregoing language (and other elaborations unnecessary to repeat) is pure obiter dicta and therefore not binding as a precedent, it is evident to us that the author of the opinion could not have realized the unseemly consequences of the remarks when applied to the facts which were there under consideration. Indeed, if it be assumed that the tax sale was valid, we are unable to discern why Rapp should have been barred from buying the property merely because he had previously sold it to Lowry in 1870.
 

 The next point of the plaintiffs is that the deed from Rectangle to Rose conveyed to the latter an equitable title to the property in suit because Buck became vested with such a title in 1905 which inured to his vendee, Rectangle. This proposition is founded on the following facts: In the deed of October 23, 1905, by which Buck conveyed to Rectangle (the pertinent provisions of which we have quoted above), it was recited that there was an adverse outstanding title to 3920 acres in T. 21 S., R. 30 E. and, as to that land, Buck reserved warranty conveying to Rectangle only “his right, title and interest * * (As heretofore explained, the land in contest is located within the 3920 acres to which Buck sold only his right, title and interest.) The deed further made mention of Buck’s suit against the heirs of Leovy in the United States Circuit Court for the Eastern District of Louisiana, wherein he claimed ownership to these lands which the Leovy heirs held under patents from the State. On November 17th 1905, or approximately three weeks after he had conveyed his right, title and interest in the lands to Rectangle, Buck compromised his suit with the Leovy heirs for the sum of $4,000. Being unable to pay the amount of the compromise, he borrowed the money from Frank B. Hayne, who evidently insisted that title to the property be placed in his name for security purposes, and, on November 17th 1905, the Leovy heirs conveyed all of the lands involved in the suit to Hayne without warranty for the recited consideration of $4000. On the same day, Buck discontinued his suit against the Leovy heirs and gave them a full release. Later, it appears that Buck had become further indebted to Hayne— for, on June 7, 1909, Hayne recovered judgment against him in the Federal Court for the sum of $9651.43. Subsequently, Hayne filed suit on the equity side of that court in which he alleged that he was holding a security title to the property acquired from the Leovy heirs; that Buck had never paid the judgment due him and he prayed that the court order the property sold in satisfaction of the debt. The demand was resisted by Buck but the claim of Hayne prevailed and the property was ordered sold by the court. Buck appealed from this judgment. This appeal was subsequently dismissed in the year 1918 for lack of prosecution. While the appeal was pending, viz., on November 11, 1913, Hayne sold all of his
 
 *615
 
 right, title and interest in the real estate to Wilbur R. Kranebell for the recited consideration of $12,273. Buck joined in this deed, formally acknowledging that he was without claim of any kind against Hayne arising from or in any way connected with Hayne’s title to the property. He further took cognizance of all of the stipulations contained in the deed, expressly consenting thereto and ratifying and confirming the same.
 

 It is the theory of plaintiffs that, inasmuch as Hayne admittedly held title to the property as security for the payment of Buck’s debt to him, the equitable title vested in Rectangle because Buck sold all of his right, title and interest to Rectangle a few weeks before the land was conveyed by the Leovy heirs to Hayne. And they further profess that the subsequent release by Buck of any claims he might have to the property, which is contained in the Hayne-Kranebell deed, amounted to naught as the equitable title had already vested in Rectangle.
 

 The point is not tenable. The first objection is that it could not be sustained without application of the doctrine of after-acquired title which we have already rejected insofar as quitclaim deeds are concerned. In Buck’s conveyance to Rectangle, he transferred only his right, title and interest in the land in controversy (this portion of the deed is to be regarded as a quitclaim), recognizing in the deed that there were adverse claims to any title he might assert. Hence, Rectangle acquired no title but only such interest as Buck had at the time of the transfer. As heretofore demonstrated, Buck had no interest whatever in these lands as Lacey, his vendor, did not acquire title to them from the Buras Levee District. If Buck subsequently acquired an interest in the lands, he had the right to abandon it to Hayne and Kranebell as it did not become vested in Rectangle.
 

 Plaintiffs also contend that Rectangle had a good title when it conveyed its interest in T. 21 S., R. 30 E. to Rose in 1923, because it had acquired the land in controversy from Mrs. Edith N. Kranebell on July 6, 1921, by quitclaim deed. The record shows that property assessed in the name of Rectangle Ranche Company, under a similar description to that contained in the 1905 Buck-Rectangle deed, was told by the State to H. J. Harvey for taxes for the year 1916. It further appears that Harvey quitclaimed this same property on July 16, 1921, to Edith N. Kranebell and, two days later, Mrs. Kranebell quitclaimed to Rectangle.
 

 We find that the quitclaim of Mrs. Kranebell did not convey to Rectangle the lands in controvesy but only such lands as it had acquired from Buck in 1905. An examination of the sheriff’s deed to Harvey shows clearly that these were the lands standing in Rectangle’s name. To make the matter absolutely certain, it appears that at the same tax sale Harvey also acquired the land in contest for taxes of 1916. This land was particularly described and assessed to
 
 *617
 
 W. R. Kranebell. Harvey quitclaimed this land to Mrs. Kranebell on October 6, 1921.
 

 Plaintiffs also contend that Rectangle acquired the property in dispute by tax deed from the State dated October 1st 1921. The record shows that, at a tax sale on that date, the Sheriff of Plaquemines Parish sold the land to Rectangle for 1920 taxes •under an assessment in the name of W. R. Kranebell. Defendants maintain, however, that this sale was an absolute nullity for the reason that the property, under the same ■description, had been previously adjudicated to the State, on September 25, 1920, under an assessment in the name of Johnson Armstrong for taxes for the previous year, 1919.
 

 With these facts before us, it is patent that the tax sale of 1921 is void as it is well established that, where property has been adjudicated to the State and not redeemed in time and manner provided by .statute, the taxing officers of the State are without power to assess and sell the property as belonging to the former owner or any other person. See Board of Commissioners v. Concordia Land & Timber Co., 141 La. 247, 74 So. 921.
 

 Plaintiffs concede the force of the above •mentioned principle but they contend that it cannot be applied here because the adjudication of the property in the name of Johnson Armstrong was invalid as the taxes ■on the land had been paid under another assessment. In support of this proposition, plaintiffs point to the assessment roll of 1919 for the Parish of Plaquemines which shows that there was assessed in the name of Johnson Armstrong
 
 “a
 
 tract of land in T. 21 S., R. 29 and 30 E. except lots 1, 2 & 3, in T. 21 S. R. 30 E.” containing 46,080 acres and that the taxes on the land so assessed were paid.
 

 We do not think that the assessment roll referred to sustains plaintiff’s position. It merely shows that the lands which Buck sold to Rectangle under the omnibus township description had been assessed to Johnson Armstrong and it cannot be construed to mean that the payment of taxes on that assessment was a payment of the taxes on the lands owned by Kranebell (but assessed to Armstrong), which were adjudicated for non-payment of taxes and are specifically described in said adjudication.
 

 The reason why the land in contest was assessed to Johnson Armstrong is made manifest by certain exhibits offered in evidence by defendants. They show that, on July 15, 1918, the tax collector of Plaquemines Parish sold the land at tax sale to Johnson Armstrong for taxes of 1918 under an assessment in the name of “Wilbur R. Kranebell (now S. J. Harvey).” A little over a year thereafter, to wit, on August 21, 1919, the property was redeemed from Johnson Armstrong by Kranebell. Thus, since Armstrong was the tax purchaser of the land and held it during 1919, the land was assessed in his name and adjudicated for his failure to pay taxes for that year.
 

 
 *619
 
 Finally, plaintiffs plead title by the prescription of 10 years provided by Article 3478 of the Civil Code. In support of this plea, they offered considerable testimony showing that, during the period that Rose held under the quitclaim deed, the lands in the township were used for trapping under leases from Rose to Rectangle and later to other persons; that Rose posted “no trespassing” signs on the lands in 1923 or 1924; that he granted a lease to one Samuel George in 1927; that George posted the lands; that plaintiff, Waterman, granted trapping leases for the seasons 1936, 1937 arid 1938 and that Rose and Morris executed a mineral lease to Gulf Refining Company in 1928.
 

 The plea is not well founded. In order to establish the acquisitive prescription, plaintiffs are required to prove, in addition to good faith possession for the required tiijie, that the deed under which they claim describes and identifies the land with clarity and that it is prima facie translative of the property. It is not enough that the description in the deed might be construed to include the land in- question. See Bendernagel v. Foret, 145 La. 115, 81 So. 869; Hunter v. Forrest, 195 La. 973, 197 So. 649 and Pierce v. Hunter, 202 La. 900, 13 So.2d 259 where many applicable authorities are cited and discussed.
 

 The instrument relied on by plaintiffs is a quitclaim deed which does not identify clearly any particular land but merely gives an omnibus description of two entire townships comprising 46,080 acres of land, more or less. While it is settled that a quitclaim deed is sufficient to support the prescription of ten years acquirendi causa (Smith v. Southern Craft Corporation, supra), it is equally well recognized that the deed can only support such prescription if it contains “the essential requirements,” i. e., an adequate description of the lands to which the grantor’s right, title and interest is conveyed. Pierce v. Hunter, supra. Here, the conveyance refers to all of the land in two townships without reference to sections or subdivisions. This type of description is wholly inadequate (even if the acquisition clauses are not considered) to form the basis of a title translative of property. The dangers of regarding such an omnibus description as being sufficiently translative of title to support the acquisitive prescription seem most apparent when consideration is given to the evidence showing the type of use which plaintiffs claim established possession of the land in dispute — some signs, leases, and trapping over a large area of land of a sporadic nature, without a scintilla of proof to show that the specific sections, in which the land in controversy lies, were actually possessed or even entered. It is not too far fetched to remark that it would'be nearly as logical to say that, if Rectangle had sold Rose its entire interest in all of the land in Plaque-mines Parish or, for that matter, the whole State, such a deed would be adequate to
 
 *621
 
 translate a title to all such land mentioned and that that sort of description would be sufficient to support a plea of prescription.
 

 The judgments appealed from are, affirmed.
 

 O’NIELL, C. J., recused.
 

 [1]
 

 Plaintiffs assert that the real consideration was the cancellation and surrender by Rose of a certain note for $55,000 made by Rectangle and secured by a mortgage on the property described in this deed. Parol evidence was offered to prove the contention.
 

 [2]
 

 The authorities are not entirely uniform on this question as it had been held in the early cases that good faith possession under a deed tranferring the vendor’s right, title and interest in described land could not form the basis for the ten year acquisitive prescription. See Eastman v. Beiller, 3 Rob. 220; Reeves v. Towles, 10 La. 276 and Avery v. Allain, 11 Rob. 436. However, in Read v. Hewitt, 120 La. 288, 45 So. 143, the court departed from this doctrine and the older cases were overruled by indirection. There, after citing the cases and a comment from Hennen’s Digest, the court concluded that “there is no material difference between the sale of property and the sale of all the vendor’s right, title, and interest therein, because such a transfer includes all that the vendor can sell or the purchaser acquire.” In support of the statement, the court quoted the following language from 13 Cyc. 655: “A conveyance of all the grantor’s right,., title and interest in and to certain described property will be construed as a conveyance of all his estate in such property, and the whole estate will vest in the grantee.” It seems apparent that the quotation relied upon does not sustain the conclusion of the court because the language does not purport to announce that a conveyance of right, title and interest transfers the thing itself but only expresses the idea that the vendor’s interest in the whole estate is conveyed. Of course, it is clear that, if the interest of the vendor extends to the whole estate, the entire property is transferred. On the other hand, if the vendor has no interest in the property, nothing will be conveyed.
 

 Be this as it may, the decision of Read v. Hewitt has been consistently followed and the use of a quit-claim deed as a basis for acquisitive prescription is no longer an open question. See Smith v. Southern Kraft Corp., supra; Perkins v. Wisner, 171 La. 898, 132 So. 493; Screen v. Trainor, 172 La. 51, 133 So. 359 and Cherami v. Cantrelle, 174 La. 995, 142 So. 150.
 

 [3]
 

 But see Rapp v. Lowry, 30 La.Ann. 1272, hereinafter discussed.