373 So.2d 732 (1979)
Dalton D. FREEMAN, Administrator of the Estate of Mrs. Arta S. Freeman, Plaintiff-Appellant,
v.
B. F. TURNER, Defendant-Appellee.
No. 13860.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1979.
Rehearing Denied July 30, 1979.[*]
Writ Refused October 8, 1979.
*733 Barham, Adkins & Coleman by Tommy J. Adkins, Ruston, for plaintiff-appellant.
Whitten & Blake by John C. Blake, Jonesboro, for defendant-appellee.
Before PRICE, MARVIN and JONES, JJ.
En Banc. Rehearing Denied July 30, 1979.[*]
MARVIN, Judge.
In this petitory-type action to determine ownership, plaintiff appeals a judgment which rejected his demands and instead recognized defendant's title to the 15 acres in dispute. We affirm.
Plaintiff and defendant both claim under deeds from a common ancestor, D. B. Tullos. Each deed included the disputed 15 acres, but conveyed other acreage as well. Plaintiff has the earlier deed (1936) but at the time it was executed, D. B. Tullos did not have a record title to the 15 acres. In the 1936 deed to plaintiff's ancestor, the printed warranty provision was changed from "with full warranty of title" to read:
"... with such warranty of title as held by vendor as to vendor and his heirs but none other, a certain tract of land..." (Emphasis supplied)
D. B. Tullos acquired title to the 15 acres in dispute in 1939 from J. T. Wilkerson, who was the purchaser at a tax sale in 1936. In 1948 D. B. Tullos conveyed by warranty deed the 15 acres as a part of a 420 acre tract to the defendant. Plaintiff filed this action in 1977 against defendant.
Other than the 1936 deed from Tullos to plaintiff's ancestor, the chain of record title to the disputed 15 acres is unbroken from severance. Plaintiff does not claim to have possessed the 15 acres. Defendant's possession generally has been civil. Defendant sold oil royalty on lands, including the 15 acres, in 1973. The record shows defendant dealing in oil and gas matters as early as 1948, but on the land other than the 15 acres.
Before the sale of the 420 acres to the defendant, D. B. Tullos had sold or leased the timber estate for 99 years in 1947 on the land other than the 15 acres. Some timber was cut on the land other than the disputed 15 acres in that year. There may have been some timber cut on the disputed 15 acres in that year but this has not been proved by a preponderance of the evidence. No timber has been cut on the 15 acres since defendant's 1948 deed.
The disputed 15 acres, which is unfenced, is in an isolated wooded area and the 15 acres has not been corporeally possessed since Mrs. Mary Womack, whose ancestor patented the land, last lived there about 1922.
On the authority of Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225 (1947), the lower court found the 1936 deed to plaintiff's ancestor to be a quitclaim deed to which the after-acquired title doctrine did not apply. In Waterman the deed read that
"... [the vendor] sold, conveyed, and quitclaimed ... unto [the vendee] ... all the right, title, interest, claim, and demand which [vendor] has in and to the following described piece of land ..." 35 So.2d at 229
The 1936 deed to plaintiff's ancestor reads:
"... D. B. Tullos ... does convey and deliver unto [vendee] ... with such warranty of title as held by vendor as to vendor and his heirs but none other, a certain tract of land ... described as ... [15 acre description follows]."
Waterman said:
"[The doctrine of after acquired title]... is really nothing more than an enforcement of the grantor's obligation *734 to deliver a good title. And it may even be proper to extend application of the doctrine to a sale without warranty where the land conveyed is adequately described. In such a case, it might be argued that the vendor would be precluded from subsequently acquiring an adverse title to the prejudice of the vendee under Article 2504 of the Civil Code, which declared that:
`Although it be agreed that the seller is not subject to warranty, he is, however, accountable for what results from his personal act; and any contrary agreement is void.'
"See also Articles 2503 and 2505.
"On the other hand, it is quite manifest that the doctrine of after-acquired title should not be expanded to include a quit-claim deed, primarily for the reason that a conveyance of that character transfers only the present interest of the vendor in the land and does not convey the property. It is generally accepted ... that there is no basis for the application of the doctrine of after-acquired title where the vendee is claiming under a quitclaim deed. And this Court, in Benton v. Sentell, 50 La.Ann. 869, 24 So. 297, 301, in distinguishing the quit-claim deed from an act of sale, remarked that it `reaches only to interests actually owned at that time by the party executing it * * *.' This being so, there is no reason why the vendor should not thereafter acquire title even though it be adverse to the vendee holding under the deed." 35 So.2d at 233-234.
While the case has been criticized for emphasizing the common-law quitclaim concept,[1]Waterman, to the extent noted, did observe the difference between a sale of land without warranty and a quitclaim of one's present interest in land. In the latter respect the conveyancing language would be important, while in the former, the language which diminishes the effect of the legally implied warranty is the important language. See CC 2501, 2503.
CC Art. 2505, however, provides that even in the case of no warranty, the seller, in case of eviction is liable to a restitution of the price, unless the buyer was aware at the time of the sale, of the danger of eviction and purchased at his peril and risk. Nonetheless, there are several cases holding that an evicted buyer is not entitled to restitution of the purchase price from the seller if the buyer had knowledge of the danger of eviction when purchasing under a non-warranty deed. See Comment, Warranty Against Eviction in the Civil Law: Limitations on the Extent of the Vendee's Recovery, XXIII Tul.L.Rev. 154, 167, and cases cited in fn. 82 (1948). This comment suggests that the Waterman court, in not applying the after-acquired title doctrine to a quitclaim deed, was indicating that a person holding under a quitclaim deed should be treated as a buyer who purchased with knowledge of the danger of eviction. See XXIII Tul.L.Rev. at p. 541.
"In refusing to apply the doctrine of after-acquired title in the Waterman case, the court demonstrated what apparently is the major function of a quitclaim deedthe protection of the vendor. A non-warranty deed, stipulating that the vendee purchases at his peril and risk, reaches a similar result because it relieves the vendor from all liability except that of liability for his own acts under Article 2504. Since the presence of a non-warranty deed, coupled either with the vendee's knowledge of the danger of eviction or a stipulation that the vendee purchases at his peril and risk, will relieve the vendor of liability for restitution of the price, the doctrine of after-acquired title should not apply to either situation. Moreover, the court has held that the doctrine of after-acquired title has no application where the vendee held under a non-warranty deed and had knowledge of the danger of eviction. Thus, the vendor would be as fully protected under this *735 type of deed as he is under the quitclaim deed." (Footnotes omitted) XXIII Tul. L.Rev. p. 543
In Avery v. Allain, 11 Rob. 436 (La. 1845) the doctrine of after-acquired title was not held to benefit a buyer under a quitclaim deed who had knowledge of the danger of eviction.
Even though a quitclaim deed does not contain a stipulation against warranty, parol evidence may be considered and the court may conclude that the parties intended that the deed should be without warranty. McLeroy v. Duckworth, 13 La.Ann. 410 (1858).
Plaintiff testified that his late mother, who died in 1959, acquired the 1936 deed from her nephew, D. B. Tullos, and that plaintiff signed as a witness on the deed. Plaintiff's testimony:
"Q. And it is your testimony that it was your impression that she had told you herself that she had lost the property? Is that correct?
"A. We thought we had.
"Q. Was that due to the tax sale?
"A. I don't know exactly the details of what it was but part of it was the fact that we believed that we didn't have a good deed to start with.
"Q. At the time Mr. D. B. Tullos conveyed to your mother?
"A. Yes."
The 1936 deed is not a quitclaim in the sense of Waterman because it conveys not simply the then interest, rights and claims of D. B. Tullos, but a specifically described 15 acres and other lands.[2] The deed, however, expressly indicates that the seller was not selling with full warranty but with some limitation.
Considering the factors revealed by this record:
that there was an attempt to diminish warranty;
that the purchaser's heir and administrator considered the purchaser "didn't have a good deed to start with," and
that the purchaser never went into possession of the 15 acres and allowed more than 40 years to elapse before she or her heirs (and then 18 years after her death) asserted any claim to the 15 acres,[3] we find that plaintiff's ancestor purchased the 15 acres[4] in dispute with knowledge of the danger of eviction. Under such circumstances, the doctrine of after-acquired title or enforcement of the warranty against eviction against the seller will not be applied to benefit the buyer.
Appellant also complains that the lower court should not have recognized defendant's title in the judgment appealed from and especially because defendant did not pray to be recognized as owner. Defendant at least has maintained civil possession over the 15 acres since the time of his deed in 1948. Plaintiff has not shown any corporeal possession adverse to defendant. La. CC Arts. 3478, 3499, Hanna v. Green, 329 So.2d 850, 857 (La.App. 2d Cir. 1976).
Defendant's title does not depend solely upon prescription, however, because the record chain of title to the disputed 15 acres from severance is unbroken, except for D. B. Tullos' dealings before he acquired record title in 1939.
Plaintiff pleaded his chain of title, including the deed to D. B. Tullos in 1939 from the tax sale vendee. Plaintiff alleged that defendant has asserted ownership by virtue of the deed from D. B. Tullos to defendant [which was in 1948]. Plaintiff prayed that his mother's estate be recognized as owner of the 15 acres and that defendant's deed be *736 erased from the conveyance records. In essence, this plaintiff is asking the court to determine the effect of the deeds from D. B. Tullos to plaintiff's ancestor and to defendant. This is not purely and solely a petitory action. In such declaratory-petitory-type "similar proceedings", CCP 3654 expressly provides that when the issue of ownership of immovable property is presented, the court shall render judgment in favor of the party who proves better title. In any event, defendant pleaded his assertion of title and acquisitive prescription. Fair and timely notice of what defendant was asserting was factually pleaded and was given to plaintiff in defendant's answer. See Paxton v. Ballard, 289 So.2d 85 (La.1974) and its progeny, Messina v. Michael, 324 So.2d 837 (La.App. 2d Cir. 1975), CCP. 2164. A "prayer" by defendant that his title be recognized was not necessary in view of pleadings of plaintiff and defendant and the authorities mentioned.
At appellant's cost, judgment is
AFFIRMED.
NOTES
[*] BOLIN and HALL, JJ., dissent from refusal to grant rehearing.
[1] See Comment, The Legal Effect of Quitclaim Deeds in Louisiana, XXIII Tul.L.Rev. 533 (1949).
[2] Fifteen (15) acres on the west side of SW/4 of NW/4 of Section 1; and the NE/4 of SE/4 of Section 2, less 10 acres in the NW portion belonging to Robert Wyatt, and being all that part of said forty north and west of the branch, all in Tp. 14 N. R. 2 West, and containing 45 acres, more or less.

The recited consideration is $450.
[3] See Allen v. Paggi Brothers Oil Company, 244 So.2d 116, 124 (La.App. 3d Cir. 1971).
[4] The title or occupancy of the remaining property described in the 1936 deed is not revealed in this record and we are concerned only with the 15 acres in dispute.