BROWN, Chief Judge.
11 Plaintiff, Claudia Simone Franklin, and plaintiff-in-intervention, George S. Franklin Jr., appeal from a trial court judgment granting motions for summary judgment filed by defendants, Rodney and Carol Ar-buckle, Camterra Resource Partners, Inc., and Petrohawk Properties, L.P. For the reasons set forth herein, we affirm.

Facts and Procedural History

This appeal stems from competing claims to the mineral rights of property located in DeSoto Parish, which is described as:
Northeast Quarter of Northeast Quarter of Section 30, Township 15 North, Range 14 West, DeSoto Parish, Louisiana, LESS AND EXCEPT, the East 13 acres thereof, containing 27 acres, more or less, together with all buildings and improvements located thereon.
The property was the separate property of George S. Franklin Jr. (“Franklin”), and he had full ownership of the property. On July 25, 2000, he transferred the property to the Franklin Educational Trust (“the Trust”) in compliance with certain court orders related to his divorce from Wendy Stuart.[1] The transfer included an express reservation of the property’s mineral rights by Franklin. The transfer was recorded in the public records on August 3, 2000. Both Franklin and Ms. Stuart were named as trustees of the Trust.
Rodney and Carol Arbuckle wanted to purchase the property and build a home. On September 14, 2000, the Arbuckles’ attorney, Robert Plummer, wrote a letter to Franklin as a trustee of the Franklin Educational Trust with an offer from the Arbuckles to buy the property at $2,500 per 12acre. The offer was accepted in January 2001. The letter did not mention anything about the minerals. During the examination of title, Attorney Plummer raised questions about whether the Trust was properly executed and thus, whether the Trust could own property. Plummer wrote to the attorney for the Trust, Jerold Knoll, on March 23, 2001, “(that the) trust was signed by George S. Franklin, Jr. before a Notary Public on April 17, 2000 (in Florida) and Wendy Stuart before a Notary Public on April 11, 2000 (in Massachusetts). The problem is that there were no witnesses to the signatures of George S. Franklin or Wendy Stuart ... I am convinced that an inter vivos trust which is not executed in accordance with the required form is not a valid trust under Louisiana law and therefore cannot own real estate.”
To clear up any questions about the Trust, attorney Plummer drafted an Adoption and Ratification of the Trust as well as a cash sale deed. These documents were given to the Trust’s attorney as well as Franklin and Ms. Stuart. On June 18 and July 3, 2001, Ms. Stuart and Franklin executed, as an authentic act, the Adoption and Ratification of the Trust, which was recorded on October 9, 2001. At the same times, the parties executed a cash sale deed (“the Arbuckle Deed”) conveying the Trust’s interest in the property. Again, all of these instruments were signed separately in Massachusetts and Florida.[2]
*186 The Arbuekle deed consists of three pages, the first two being relevant to this dispute. On the first page, Franklin and Ms. Stuart appeared |sas trustees of the Trust and conveyed the Trust’s ownership in the property to the Arbuckles. This page included a disclaimer that the transfer was “subject to any and all prior recorded subdivision restrictions, rights-of-way, easements, leases, and mineral reservations.” On the second page of the deed, Franklin appeared in an individual capacity. The deed states that he “herein quitclaims, conveys, and delivers unto Vendees all interest he may have in and to the above described property.”
The parties agree that, at the time of the sale in 2001, the mineral rights were not specifically discussed in the negotiations. This was before the development of the Haynesville Shale. In 2006, there was increased interest in minerals in DeSoto Parish. Arbuekle became concerned over possible drilling operations on the property. Arbuekle contacted attorney Plum-mer, who reviewed the Arbuekle Deed and concluded that Franklin still held a reservation on the mineral rights. Now, in his deposition, attached to the motions for summary judgment, Plummer stated that at that time he reviewed only the first page of the deed which contained the “subject to” language. Plummer then contacted Franklin, through counsel, Jerold Knoll, and proposed an amendment to the Ar-buckle Deed whereby Franklin would agree to prohibit drilling operations on the surface of the property. Franklin agreed; however, the amendment was never executed due to acrimonious issues between Franklin and Ms. Stuart.
In 2008, the Haynesville Shale was in play. On April 4, 2008, the Arbuckles entered into a mineral lease with Camterra Resource Partners, Inc. (“Camterra”), recorded on April 10, 2008. On June 1, 2008, Camterra |4assigned the lease to Petro-hawk Properties, L.P. (“Petrohawk”). Thereafter, on July 21, 2008, Franklin transferred the property’s mineral rights to his current wife, Claudia Franklin, through an inter vivos donation.
On January 26, 2009, Claudia Franklin filed suit against defendants, seeking a declaratory judgment that she was owner of the mineral rights. She also asked the court to issue an injunction against mineral operations and to declare the mineral lease between the Arbuckles and Camterra null. Defendants individually filed motions for summary judgment against Claudia Franklin.
While the motions for summary judgment on Claudia Franklin’s claims were pending, Franklin intervened in the suit, alleging that the parties’ original intent was that he reserve his mineral interests in the property and that the Arbuekle Deed should be so interpreted. Alternatively, he sought reformation or rescission of the deed based on error. On February 28, 2012, the trial court granted the motions for summary judgment as to Claudia Franklin’s claim, holding that the Arbuekle Deed clearly and unambiguously transferred both the surface and the mineral rights to the Arbuckles.
On March 9, Claudia Franklin filed a motion for a new trial from the February 28 judgment. The trial court granted the motion on April 16, 2012, “solely for the sake of judicial economy.” Defendants then filed motions for summary judgment against the claims of Franklin. On July 18, 2012, the trial court granted all the motions for summary judgment against plaintiffs.

_J^Discussion

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is *187 no genuine issue as to material fact and that the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). A genuine issue of material fact is one as to which reasonable persons could disagree. Argonaut Great Cent. Ins. Co. v. Hammett, 44,308 (La.App.2d Cir.06/03/09), 13 So.3d 1209, writ denied, 09-1491 (La.10/02/09), 18 So.3d 122.
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Argonaut Great Cent. Ins. Co., supra. Summary judgments are favored under Louisiana law; however, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and doubt must be resolved in the opponent’s favor. La. C.C.P. art. 966(A)(2); Argonaut Great Cent. Ins. Co., supra.

Ambiguity of the Arbuckle Deed

The determination of whether the language of a contract is clear or ambiguous is a question of law. Stephenson v. Petrohawk Properties, L.P., 45,296 (La.App.2d Cir.06/02/10), 37 So.3d 1145. Summary judgments are appropriate for questions of law.
Regarding the interpretation of deeds this court has held that:
The cardinal rule to be followed in construing deeds, uncertain because of ambiguity, is to ascertain the intention of the parties from the entire language of the deed. In the interpretation of deeds, the intentions of the parties must be gathered from an inspection of the | ^instrument itself, without the aid of extrinsic evidence, if their intentions can be thus ascertained. If the description is so ambiguous as to leave doubt as to the parties’ intent, the court may resort to extrinsic evidence as an aid in construction.
Dogal v. Pickett, 628 So.2d 184, 187 (La.App. 2d Cir.1993).
Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. Where the words of a contract are clear, explicit and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four corners of the instrument and cannot be explained or contradicted by parole evidence. Horton v. Mobley, 578 So.2d 977 (La.App. 2d Cir. 1991), writ denied, 582 So.2d 1310 (La.1991); see also, La. C.C. arts. 1848 and 2046.
A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La. C.C. art. 2049. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.
Quitclaim is a word of art with a defined legal meaning. The Civil Code explains that what is called quitclaim at common law is an assignment of rights without warranty in the civil law. La. C.C. art. 2502, Comment(c). A quitclaim deed is one which purports to convey, and is understood to convey, nothing more than the interest or estate in the property described of which the grantor is seized or possessed, if any, at the time, rather than the property itself. Waterman v. Tidewater Assoc. Oil Co., 213 La. 588, 35 So.2d 225 (1947). The Supreme Court of Louisiana has held that the title to real property may be as effectually transferred by quitclaim as by any other form |7of conveyance. Id. But such a deed conveys only such title or interest that the grantor had at the time it is given and excludes any *188 implication that he has any title or interest. Id.
Further, the seller is bound to explain himself clearly respecting the extent of his obligations; any obscure or ambiguous clause is construed against him. La. C.C. art. 2474. In deeds, where the language making an exception or reservation is doubtful, it must construed most favorably to the grantee. Doyal, supra.
The provisions in the Arbuckle deed are not inconsistent or ambiguous. The trustees of the Educational Trust transferred what the Trust owned subject to any recorded mineral reservations. Franklin and Ms. Stuart signed as trustees. In the next section of the deed Franklin appeared in his individual capacity. The deed states that he “quitclaims, conveys and delivers all interest he may have in and to the above described property.”
Plaintiffs attached the affidavits of Franklin and his attorney Jerold Knoll stating that the deed left in place Franklin’s prior mineral reservation and that the quitclaim provision was necessary merely to clear up any problems about whether the Trust could own property. This is extrinsic evidence and where the words of a contract are clear, explicit and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four corners of the instrument and cannot be explained or contradicted by parole evidence. Horton, supra.

Error

La. C.C. Art. 1848 provides that:
^Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement.
Though the trial court and the parties reference the concepts of mutual error and unilateral error, this court has recently observed that “our civilian provisions on ‘error’ do not utilize the terms ‘unilateral error’ or ‘mutual error,’ and nowhere in the Civil Code is any distinction between the two expressly addressed.” Peironnet v. Matador Resources Co., 47,190 (La.App.2d Cir.08/01/12), 103 So.3d 445, writs granted, 12-2292, 12-2377 (La.01/11/13), 106 So.3d 541, 542.
Consent may be vitiated by error, fraud or duress. La. C.C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949.
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation. La. C.C. art. 1950.
As the supreme court in Reynaud v. Bullock, 195 La. 86, 196 So. 29, 34 (La.1940), stated:
It is an established rule of law in our jurisprudence that “Either party is always permitted, in a suit between the parties to a contract, to correct any error in the instrument purporting to evidence the contract, so as to make it express truly and correctly the intention of the parties,” provided the rights of |flthird parties have not intervened. The error or mistake must be mutual. The burden is on the one seeking the reformation to prove the error and he must carry the burden by clear, and the *189 strongest possible, proof. (Citations omitted).
In the case sub judice, Attorney Plum-mer on behalf of the Arbuckles determined that the Trust owned the surface of the property the Arbuckles wanted to buy. Obviously, he also found in the deed to the Trust that Franklin reserved ownership of the minerals, that is, a mineral servitude. Attorney Plummer wrote to Franklin as a Trustee about the purchase of the Trust’s property. Plummer asked for a copy of the Trust’s instrument. He was given a copy, and he concluded there was a problem in its execution and that the Trust could not own property. Thus, Plummer drafted documents to cure this problem as well as a deed transferring the property. Everything Plummer did was to correct the Trust’s problem including having Franklin as the owner who transferred the property to the Trust to also quitclaim any interest he may have to the property as a safeguard. As to the mineral reservation, a cash sale would have been proper because Plummer knew that Franklin owned the mineral servitude. Several years thereafter, Plummer contacted Franklin to obtain an amendment to the deed which recognized Franklin’s ownership of a mineral servitude and agreement to prohibit drilling on the property.
Both Knoll and Franklin state in affidavits that Franklin’s intent was to keep his mineral servitude. Plummer’s acts are somewhat confusing. Certainly there are material issues of facts in this respect.
| mHowever, La. C.C. Art 1952 states that:
A party who obtains rescission on grounds of his own error is liable for the loss thereby sustained by the other party unless the latter knew or should have known of the error.
The court may refuse rescission when the effective protection of the other party’s interest requires that the contract be upheld. In that case, a reasonable compensation for the loss he has sustained may be granted to the party to whom rescission is refused.
Under the Revision Comments the following is discussed:
(d) In determining whether to grant rescission or, when rescission is granted, whether to allow any recovery to the party not in error, the court may consider whether the error was excusable or inexcusable, a distinction received by modern civilian doctrine. See 6 Planiol et Ripert, Traité pratique de droit civil frangais 227-229 (2nd ed. Esmein 1952); Litvinoff, “ ‘Error’ in the Civil Law,” in Essays on the Civil Law of Obligations 222, 226-269 (Dainow ed.1969); Ghestin, La notion d’erreur dans le droit positif actuel 146-165 (1968). Louisiana courts have granted relief when error has been found excusable (see Boehmer Sales Agency v. Russo, 99 So.2d 475 (La.App.Orl.Cir.1958)) and refused it when error has been found inexcusable (see Watson v. The Planters’ Bank of Tennessee, 22 La.Ann. 14 (1870)). The court may also consider whether the other party has changed his position and the importance of such a change. In this context, Louisiana courts have said that in case of doubt as to error in the motive of one of the parties courts will lean heavily in favor of one seeking to avoid loss and against one seeking to obtain a gain. See Dorvin-Huddleston Developments, Inc. v. Connolly, 285 So.2d 359 (La.App. 4th Cir.1973), reversed on other grounds 298 So.2d 734 (La.1974), on remand 320 So.2d 253 (La.App. 4th Cir.1975).
In Scott v. Bank of Coushatta, 512 So.2d 356 (La.1987), the court held that the contractual negligence defense was acknowledged as early as 1820 in the case of Wikoff v. Townsend, 7 Mart, (o.s.) 451 *190 (La.1820). In Wikqff, the court refused to grant rescission, stating:
We do not think that this is an error which vitiates the contract. The defendants understood they were purchasing a space of two hundred feet in front; they knew, or at least must be supposed to have known, what extent that was. If they wanted to satisfy themselves on that score, they might have had it measured; but, if relying on their own judgment they made any mistake, as to the real extent of the two hundred feet, they cannot plead such a mistake as an excuse.
7 Mart, (o.s.) at 452-53.
Other Louisiana cases have rejected the defense of error where the complaining party, through education or experience, had the knowledge or expertise to easily rectify or discover the error complained of. See, e.g., Swearingen v. Maynard, 9 So.2d 272 (La.App. 2d Cir.1942) (businessman); Tiblier v. Family Real Estate Inc., 195 So.2d 432 (La.App. 4th Cir.1967) (dentist). In Scoggin v. Bagley, 368 So.2d 763, 767 (La.App. 2d Cir.1979), the court found that “[t]he plaintiff is an oil and gas man of some 30 years experience,” and based on that, “plaintiffs unilateral error as to the principal cause cannot serve to invalidate the top lease.”
In the case before this court, Franklin was experienced concerning the reservation of minerals. He admitted to having made other transfers wherein he reserved the minerals. Further, his attorney admitted to examining the deed. Both should have recognized that Franklin was transferring any interest he had which would include his mineral interest.
As to Camterra and Petrohawk, La. C.C. Art. 3342 applies. La. C.C. Art. 3342 provides that:
A party to a recorded instrument may not contradict the terms of the instrument or statements of fact it contains to the prejudice of a third person who after its recordation acquires an interest in or over the immovable to which the instrument relates.
Having found that the Arbuckles deed not to be ambiguous, the principles of recordation protect third parties acquiring an interest in the property.
112 Conclusion
For the reasons set forth above, the judgment of the trial court is affirmed. Costs of appeal are assessed equally against appellants and appellees.
AFFIRMED.
STEWART, J., dissents with written reasons.

. Franklin also included in the transfer another tract in Claiborne Parish which is not an issue in the present suit.

. According to Franklin, their divorce was acrimonious and the two only communicate through writing or counsel.