## No. 12,840.

### BENTON & MILLIKEN VS. G. W. SENTELL ET AL..

Plaintiff in a partition suit, who has cited a number of co-defendants as owning certain designated interests in the property sought to be divided, has no legal reason to complain that one of the defendants, after denying that the interest of one of her co-defendants was as large as had been stated in the petition, should, under an agreement with that co-defendant, have discontinued (under reservation of her rights) her opposition on that point, and permitted the partition to proceed on the basis alleged. Contestant could not, thereafter, attack generally the partition, on the ground that that particular party had been assigned too large an interest. The partition as made would stand, though the two parties might have to adjust rights *dehors* the partition between themselves. If plaintiffs obtain all they are entitled to, they have no legal concern as to how the other parties to the litigation may settle their relative differences.

A vendor having, by warranty deed duly recorded, undertaken to sell an undivided fifth interest in a plantation when his real interest was less, any interest therein which the vendor should thereafter acquire, up to the extent of the interest conveyed, would at once, without any act between the parties, enure to the benefit of the vendee. A declaration in the act of sale as to how he had acquired the thing sold would be merely descriptive, and not limit the extent of the thing sold or the warranty.

A quit-claim deed reaches only to interests actually owned at that time by the party executing it; it is of no effect whatever as to interests already gone.

A husband uniting with his wife in executing a quit-claim deed is estopped from attempting thereafter to acquire by seizure (as a creditor of his wife's succession) rights which she had, with his consent, voluntarily surrendered.

APPEAL from the Seventh Judicial District Court for the Parish of Carroll. *Montgomery, J.*

*C. S. Wyly* for Plaintiff, Appellant.

*Clifton F. Davis* for Mrs. Kate Ellett, Co-defendant, Appellee.

Argued and submitted June 4, 1898.
Opinion handed down June 13, 1898.
Rehearing refused June 29, 1898.

The opinion of the court was delivered by

NICHOLLS, C. J.   The plaintiffs in this case alleging themselves to be each the owner of an undivided *one-fifth* interest in a plantation in the parish of East Carroll, known as the Glen Mary planta-

tion, brought this suit for a partition of the same between all the joint owners thereof, setting up incidental demands by reason of improvements which they averred they had put upon the property.

By consent of parties all the issues raised in the lower court, under the pleadings of the different parties, but one were postponed for examination and decision to some future period. The case was taken up and tried on the single question as to the extent of the interests of the different joint owners.

Plaintiffs in their original petition named as joint owners of the plantation with themselves George W. Sentell, of New Orleans; Mrs. Kate Ellett, of Memphis, Tenn., and George M. Fletcher, of New York, declaring that *each of said parties owned an undivided one-fifth interest in the plantation*. At their instance the parties named were cited. By supplemental petition plaintiffs having alleged the death of George W. Sentell, Mrs. Susie S. Barber, a daughter and heir of the deceased who had acquired his interest in this property in partition proceedings between herself and her co-heirs, was made a defendant in lieu of her father.

All the defendants answered. After George M. Fletcher had done so, the plaintiffs bought out his interest in the property, and alleging that fact increased accordingly their claims as to the extent of their joint ownership. Mrs. Kate Ellett, in her answer (filed before this purchase of Fletcher's interest had been made), denied that the interest of the plaintiffs or Mrs. Barber or Fletcher in the property was such as plaintiffs had alleged it to be, and averred that her own interest was larger than had been declared in the petition. She alleged that the property was susceptible of division in kind, and prayed that the interest of each of the co-owners be set apart to them separately and in full ownership respectively, as follows: To *herself, two-fifths;* to *G. M. Fletcher, three-twentieths;* to *Mrs. Barber, three-twentieths;* to *J. S. Milliken, three-twentieths;* to *C. D. Benton, three-twentieths.*

Upon the filing of this answer of Mrs. Ellett, Mrs. Barber appeared, excepting, that Mrs. Ellett's attack was unwarranted and unjustifiable; that the effect of the same was to change her (Mrs. Ellett's) position from a co-defendant with her to that of a plaintiff adverse to her, in a petitory or possessory action; that she could not advance her claims in this collateral manner.

By agreement between these two parties, Mrs. Ellett's attack upon

Benton & Milliken vs. Sentell et al.

the extent of Mrs. Barber's interest was (under reservation of rights) discontinued in spite of the objections made thereto on the part of the plaintiffs. These objections being overruled, plaintiffs reserved a bill of exceptions.

It is conceded on all sides that the *Glen Mary plantation* belonged, at the time of her death, to a *Mrs. Mary Coleman, widow of William Stowers.* Mrs. Stowers was a daughter of J. B. Coleman, Sr., and Mrs. Catherine Coleman. She died childless, leaving surviving her, her father and mother, two brothers (John Ballard Coleman and Frank Coleman) and three sisters (Mrs. Kate Ellett, widow of H. T. Ellett; *Mrs. Jennie Coleman,* wife of George M. Fletcher, and *Mrs. Rebecca Coleman,* wife of P. Jones Yorke).

*Mrs. Rebecca Coleman* (Mrs. Yorke) subsequently died, leaving as her heir *Miss Catherine Coleman Yorke,* who afterward married *H. P. Brush.*

The father, *John C. Coleman, Sr.,* died in *December, 1874.*

The mother, Mrs. Catherine Coleman, died in January, 1889.

She seems to have been *appointed tutrix of one or more of her children,* but of which ones does not appear. What the ages of the different children were, the record does not disclose.

While tutrix, she *as such leased in its entirety a certain store* on the *Glen Mary Plantation* to Benton & Co., a firm then composed of *C. D. Benton and James Andrews.*

On the 14th of May, 1879, the mother, Mrs. Catherine Coleman (then a widow), executed in Tennessee an act before H. L. Claiborne (a notary public in that State, and commissioner for the State of Louisiana), in which she declared, " that in consideration of the sum of three thousand five hundred dollars to her in hand paid *by Mrs. Kate Ellett,* she did thereby grant, bargain, sell and convey unto the said Mrs. Kate Ellett, her heirs and assigns, all her right, title and interest in and to that plantation in the parish of Carroll, State of Louisiana, fronting on Bunches Bend Lake, or Old River, *formerly belonging to William Stowers, and by him left to his widow, Mary Stowers, and by her to her father, John B. Coleman,* bounded above (giving the description of the property) to have and to hold the same unto the said Mrs. Kate Ellett, her heirs and assigns forever. But this conveyance was made as a security for the payment of the said sum of three thousand five hundred dollars, and is to be null and

void on the payment of the said sum of money, with interest in two years from the date thereof."

This act was recorded in the mortgage book of the parish of Carroll on the twenty-second day of May, 1879, and reinscribed on the thirteenth day of March, 1889.

On the *1st of April, 1880*, by act before Garner, notary public, *John Ballard Coleman* sold to *C. B. Benton* under full warranty the following described property, to-wit:

" The *undivided one-fifth* (1-5) *interest in and to the following land or plantation situated, etc.* (describing the Glen Mary plantation) * * * *being the undivided one-fifth interest* inherited by the vendor from his father, John B. Coleman." * * * This *act was recorded on April 5, 1880.*

On the *21st of May, 1887*, the sheriff *of East Carroll parish* executed a deed to *George W. Sentell* and *W. B. McLean* of an *undivided one-fifth interest* in the Glen Mary plantation, as being the last and highest bidders at a sheriff's sale, made in execution of a *judgment* obtained by *Mrs. Lizzie Coleman against her husband, Frank Coleman*, the said *one-fifth interest having been seized and sold as the interest of Frank Coleman in said property.*

This *act was recorded May 26, 1887. On February 14, 1894, W. B. McLean* sold the interest so acquired by him to George Sentell, by act *which was recorded* March 5, 1894.

On the *26th of February, 1896*, in a *partition between the heirs of George W. Sentell*, the property so acquired by Sentell and McLean, and by Sentell from McLean, was set over to Mrs. Susie Sentell, wife of Leonard K. Barber, one of the defendants in the case. The act *was recorded on the 15th of April, 1896.*

On the *17th of June, 1889*, John Ballard Coleman executed the following instrument, *which was recorded* on the *10th of April, 1890:*

" Whereas, on the *14th day of May, 1879*, Mrs. Catherine Coleman, of Nashville, Tenn., executed a mortgage upon the real estate hereinafter described, to secure *Mrs. Kate Ellett*, wife of H. T. Ellett, in the sum of thirty-five hundred dollars, and whereas, said Catherine Coleman has since died, leaving said debt unpaid; and whereas the same is largely more than the value of the real estate, and it is desirable to rest the title to the same in said Kate Ellett; therefore, this indenture witnesseth that, in consideration of the premises and the sum of five dollars to us in hand paid, we, the undersigned, who besides said Kate

Ellett are the only heirs at law of the said Catherine Coleman, do remise, release and forever quit-claim unto her, the said Kate Ellett, her heirs and assigns, *all our right, title and interest and estate* in and to the real estate so mortgaged, and which is described as follows:

A plantation or tract of land in the parish of Carroll and State of Louisiana, fronting on Bunches Bend Lake, or Old River, *formerly belonging to William Stowers, and by him left to his widow, Mary Stowers, and by her to her father, John B. Coleman*, bounded above, etc. (describing the Glen Mary plantation)."

At the time this act was executed, John Ballard Coleman had already disposed of an undivided one-fifth interest in the Glen Mary plantation to C. D. Benton, and that act was then of record.

On the 8th of April, 1889, Miss Catherine Coleman Yorke (afterward Mrs. Brush) sold to C. D. Benton and James S. Milliken, under full warranty, " the following described property, to-wit: The undivided one-fifth interest in and to that tract of land or plantation situated on Bunches Bend Lake and known as Glen Mary (describing the property) * * the part, parcel, share and interest thereof herein conveyed being the one undivided fifth (1-5)." * * This act was recorded October 16, 1889.

On the fourteenth day of May, 1889, Frank H. Coleman, John B. Coleman, Mrs. Jennie C. Fletcher (wife of George M. Fletcher) and Catherine C. Brush (formerly Catherine C. Yorke) executed a quit-claim deed in favor of Mrs. Kate Ellett in words precisely similar to those used in the quit-claim deed of J. Ballard Coleman already copied. George M. Fletcher, husband of Jennie C. Coleman, and H. T. Brush, husband of Catherine C. Yorke, signed this act. The act seems to have been signed at different times after the 14th of May, 1880.

The act as signed by Frank Coleman, Mrs. Fletcher and Catherine Coleman Yorke (Mrs. Brush), was recorded on the 2d April, 1890.

It will be seen that when this act was executed by Frank Coleman his interest in Glen Mary had been already sold in the suit of his wife against herself, and that Catherine C. Yorke had already sold her interest in Glen Mary on the 8th ef April, 1889, to Benton and Milliken, and the act to those parties from Miss Yorke was recorded before the quit-claim deed to Mrs. Ellett was recorded.

Mrs. Jennie Coleman Fletcher's interest in Glen Mary does not seem to have been alienated or encumbered at the time of her signing the quit-claim deed in favor of Mrs. Ellett.

On September 12, 1894, the sheriff of East Carroll parish executed a deed to George M. Fletcher of an undivided one-fifth interest in the Glen Mary plantation, as being the last and highest bidder at a public sale made in the matter of the succession of his wife, Jennie Coleman, at which sale the interest of his said wife in said Glen Mary plantation was advertised and sold as being an undivided fifth. This act was recorded November 5, 1894.

On February 19, 1898, after this suit was filed (and after Fletcher had filed an answer in the case) George M. Fletcher sold to C. D. Benton and J. S. Milliken the undivided one-fifth interest which he had purchased in the succession of his wife.   The act was recorded ' March 11, 1898.

Mrs. Ellett's claim of an ownership of two-fifths in Glen Mary plantation is based upon the theory that at the death of Mrs. Mary Stowers, the property was not willed by her to her father, as declared in the mortgage which Mrs. Catherine Coleman gave to Mrs. Ellett, in the act from J. Ballard Coleman to C. D. Benton, and in the quit-claim deeds signed by Ballard Coleman, Frank Coleman, Mrs. Jennie Fletcher and Mrs. Catharine Yorke Brush, on which she declares— but that it descended to her legal heirs, who were her father and mother and brothers and sisters.

That the father inherited a fourth, the mother a fourth, and the brothers and sisters (five in number) each a fifth of a half, or a tenth each.   That when the father died, each child inherited from him a fifth of a fourth, or one-twentieth.

That when the mother died each child inherited from her a fifth of a fourth, so that the ultimate interest of each child in the property was one-fifth of one-half, equal to one-tenth, or two-twentieths, plus one-fifth of one-fourth, equal to one-twentieth, plus one-fifth of one-fourth, equal to one-twentieth, equaling altogether four-twentieths, or one-fifth.

That subsequently all of the four children relinquished to her their one-twentieth inherited from their mother, so that, adding these four-twentieths (one-fifth) to her own prior interest, she now holds an undivided two-fifths interest in the property.   She does not pretend that the parties signing the quit-claim deeds intended to convey to her anything more than their respective interests in the property that was inherited (on her theory) from their mother.

Though the parties for years all acted upon the theory and belief

that Mrs. Mary Stowers bequeathed Glen Mary plantation to her father, no evidence was introduced at all to establish that fact, or that either Mrs. Stowers' succession or that of J. B. Coleman was ever opened. If such a will was ever made, it was never produced or probated.

Whether Mrs. Ellett denies absolutely that there ever was any such will, or that having never been probated it remained without effect (C. C. 1644), we do not know.

All the other parties acknowledge, that Mrs. Ellett is entitled to an undivided fifth—that is to say, all parties, but herself, adhere still to the idea that the property passed from Mrs. Stowers to her father.

Mrs. Ellett insists, that even should she be wrong in her legal position, she is entitled to hold that assumed by her for the reason that the plaintiffs by their acts and conduct have estopped them-selves from contesting its correctness. She claims that Benton was for years the intimate friend and counselor of her family and of her-self—that he has always recognized and dealt with her on the basis of the situation which she is contending for, and it is too late for him to gainsay it. That Milliken was fully advised of everything done, and is he also estopped, and that Fletcher having himself signed and approved the quit-claim deed granted by his wife, is in no position to go behind it.

The District Judge rendered judgment sustaining Mrs. Ellett's' plea of estoppel and decreed Glen Mary plantation to the parties to this suit in the proportions as follows: To Benton and Milliken, nine-twentieths; to Mrs. Kate Ellett, seven-twentieths; to Mrs. S. K. Barber, four-twentieths, and that said interest be set apart in full ownership.

The District Court evidently gave effect to the quit-claim deed of Ballard Coleman—Mrs. Jennie Fletcher and Mrs. Catherine York Brush, to the extent of recognizing that each of those parties conveyed thereby to Mrs. Ellett a one-twentieth interest, which they held as being heirs of their mother and on the theory, that the property passed from Mrs. Stowers' succession as an intestate succession to her legal heirs. The interest of Mrs. Barber, for the time being, not being contested, was admitted as correct at four-twentieths or one-fifth.

Plaintiffs appealed.

They maintain that whether or not at the time Ballard Coleman conveyed to C. D. Benton the one-fifth of the Glen Mary plantation, that was in reality the extent of his interest, that fact plays no important part in the litigation, inasmuch as on Mrs. Ellett's theory of the facts of the case he none the less ultimately acquired as heir of his father and of his mother an interest sufficient to supplement the interest, which (on that theory) he had before, so as to make good his recorded warranty deed of an undivided fifth interest in the Glen Mary plantation.

That as he acquired these new interests they enured at once to Benton's benefit. In support of this position they refer to Bonin vs. Eyssaline, 12 M. 187; McGuire vs. Amelung, 12 M. 649; Woods vs. Kimbal, 5 Martin (N. S.), 247; Fenn vs. Rils, 9 La. 99; Stokes vs. Schackleford, 12 La. 170; Lee vs. Ferguson, 5 An. 532.

They say there was no intervening obstacle then existing to the operation of the doctrine announced in the decisions quoted. That when once this accretion (if it could be so styled) took place it was beyond the power of Ballard Coleman by a subsequent quit-claim deed to his sister to alter the already fixed existing condition.

They contend that when Catherine Coleman Yorke on the 8th day of April, 1889, conveyed to Benton & Milliken an interest of one undivided fifth in the property, she held that interest in it in point of fact; whether she should be considered as having inherited it directly from her grandfather alone, or whether she did so through first her mother as one of the legal heirs of Mrs. Stowers, and next as becoming subsequently a legal heir of her grandfather and then her grandmother.

That when she executed her quit-claim deed to Mrs. Ellett she had already disposed of her entire interest in Glen Mary to Benton & Milliken, and the deed to the latter was also placed of record before the quit-claim deed was recorded.

The first point to which we direct our attention is the complaint made by the plaintiffs, that the court should have permitted Mrs. Ellett to have discontinued her attack as to the extent of Mrs. Barber's interest in the property. Plaintiffs had brought Mrs. Barber as a party defendant into the case, and the effect of the discontinuance was not to throw her out. It was out of the power of either Mrs. Barber or Mrs. Ellett, or both, to disconnect the former from the suit. Once in it, she was bound to remain unless she could

herself successfully plead some exception having the effect of dis-
missing her. Mrs. Ellett was perfectly free as between herself and
Mrs. Barber to contest or not the latter's rights, or having contested
them,·to discontinue the attack either absolutely or under reserva-
tion. We do not see how plaintiffs could be prejudiced in this mat-
ter. If they obtain all they are entitled to, they have no interest as
to how the other parties may dispose of or settle their own relative
differences. If this case goes to judgment, and the rights of parties
other than those as between Mrs. Barber and Mrs. Ellett be fixed on
the basis of Mrs. Barber's having an undivided one-fifth interest in
the property, Mrs. Ellett could not hereafter renew her attack and
have the partition rescinded or modified on the ground that her
interest was different from that which is for the present conceded.
The attack if made, would have to be directed against the moneys
which Mrs. Barber should (if the partition was by licitation) have
(as between those two parties exclusively) unduly received beyond
her legal share, or exclusively against the property which should
have been specially allotted to her in kind. There could be.no gen-
eral upsetting or rescission of the partition itself.

The District Court failed to disclose upon what facts or acts it held
Benton, or Benton & Milliken, estopped from claiming the exact
rights to which they are legally entitled. We can discover nothing
wherein they have violated confidence or fiduciary relations, or led
Mrs. Ellett into any course of conduct prejudicial to her. The act of
sale from Ballard Coleman to Benton was at a time when all parties
were of the opinion that Glen Mary had been bequeathed to her
father, and when as a result of that fact Ballard Coleman's interest
in it would have been an undivided fifth. There is no reason
assigned why he could not and why he should not have undertaken
to make the sale he did. If he should make any error in the extent
of the interest he conveyed, he would be bound on his warranty.

If it be true, which is by no manner of means certain, that he did
really sell more than he was entitled to, the other fact that he should
have subsequently become the heir successively of his father and
mother by their deaths, and by so becoming had fulfilled his war-
ranty, were legal results flowing out of a condition of affairs to
which he did not lead up and of which he was strictly entitled to
avail himself. We can see no valid reason why plaintiffs should
not have purchased the interest of Catherine Yorke, or subsequently
the interest of Fletcher.

We find no ground for holding that Mrs. Ellett had been influenced by Benton to follow the particular course which was adopted, of causing the various parties interested in the Glen Mary plantation to execute quit-claim deeds to her instead of proceeding to foreclose on what is correctly said was at best a mortgage held by Mrs. Ellett. Her son says, on the contrary, that the course followed was under the advice of a commissioner for Louisiana in Tennessee, who claimed to understand Louisiana law. By what authority Mrs. Coleman had mortgaged that property to Mrs. Ellett does not appear on the face of the instrument which she signed, she had no ownership in it, for it was therein declared that it had been left by Mrs. Stowers to her father. The parties who signed the quit-claim deeds never acknowledged their direct personal liability on the loan made to their mother, nor her authority to mortgage the plantation, nor acknowledge that their mother had any ownership therein. They had the right if they thought proper, as owners of the property or interested therein, to relinquish any rights they might have therein to anybody (so long as the rights of third parties legally interested were not prejudiced), independently of any question of mortgage, or liability on their part, direct or indirect, to any person when they did so.

This was all they attempted to do, and this was all they could do. It is a mistake to assume that if Mrs. Ellett had undertaken to foreclose on what is referred to throughout as the mortgage to Mrs. Ellett, that she would have occupied to-day any better position than she has now, as it is quite probable that the parties who signed the quit-claim deeds would have resisted a proceeding of that character. Whether she would or not have occupied a better position, we do not see how plaintiffs are accountable for her not holding it. We think that plaintiffs are correct in their position, that if Ballard Coleman having by warranty deed duly, recorded, undertaken to sell to Benton an undivided fifth interest in the plantation, when his real interest was less, should thereafter acquire an interest up to the extent of the interest conveyed, the latter would at once, without any act between the parties, enure to the benefit of Benton. Coleman undertook to sell absolutely that precise interest, and the subsequent declaration in the act as to how he acquired the thing sold was merely descriptive, and did not limit the extent of the thing sold, or the extent of the warranty.

We think that a quit-claim deed reaches only to interests actually owned at that time by the party executing it; that it is of no effect whatever as to interests already gone.

In the very nature of things there is a great difference between an act of sale or donation and a quit-claim deed. It is true that through the latter, interests in property may be acquired, for the party quit-claiming is ordinarily estopped from subsequently asserting rights which had been by him relinquished. A person undertaking to sell warrants the existence of and his ownership of the thing sold, and is bound to make the warranty good; but a party quit-claiming carries out precisely what he undertook to do in simply abstaining from disturbing or questioning the rights of those in whose favor he has renounced.

We think, however, that George M. Fletcher was estopped from purchasing or legally conveying to Benton & Milliken the full undivided one-fifth interest in Glen Mary which he attempted to sell to them. Mrs. Fletcher, with her husband's consent, quit-claimed to Mrs. Ellett "all her right, title and interest in the Glen Mary plantation." Mrs. Ellett does not pretend that that relinquishment, broad as it is, goes further than to surrender her one-twentieth of the property.

No reason has been assigned why this deed is not valid. There were then no outstanding rights upon the property that we have been advised of. The husband claimed afterward to be a creditor of his wife, but the time for him to have objected, if objections he had to make, was prior to the signing of the act. The act having been signed by him and his wife and placed of record, he was estopped from attempting to acquire through his wife's succession the rights which she, with his consent, had voluntarily surrendered. The plaintiffs, after this suit was brought and the pleadings of all the parties had fully developed, attempted to purchase this one-twentieth interest which Mr. Fletcher had parted with. Even if under other circumstances they could have acquired it, they certainly could not do so under existing circumstances.

We are of the opinion that plaintiffs acquired, through Ballard Coleman, an undivided one-fifth interest in the property; from Catharine Coleman Yorke an additional one-fifth interest, and from George M. Fletcher three undivided twentieths—in all, eleven-twentieths; that Mrs. Barber owns four undivided twentieths, and that Mrs. Ellett owns five undivided twentieths.

For the reasons herein assigned, it is ordered, adjudged and decreed that the judgment appealed from be amended by decreeing the Glen Mary plantation to belong to the parties to this suit in the proportion as follows: To Benton & Milliken, eleven-twentieths; to Mrs. Kate Ellett, five-twentieths, and to Mrs. L. K. Barber, four-twentieths.

It is further ordered, adjudged and decreed that the said judgment be further amended by ordering the costs below to be paid by the respective parties according to their respective interests, and that as so amended the judgment appealed from is affirmed.    Costs of appeal to be borne by the parties according to their respective interests.