490 So.2d 265 (1986)
Virginia Hendrix, wife of/and Oren DALLAS
v.
Robert G. FARRINGTON, Jr., Robert G. Farrington, III, and the Parish of Jefferson.
No. 85-C-0481.
Supreme Court of Louisiana.
May 30, 1986.
*266 Michael Baham, Haik and Minvielle, New Iberia, Garland Rolling, Metairie, for plaintiffs-applicants.
Ernest Barrow, II, Grant & Barrow, Gretna, for defendants-respondents.
LEMMON, Justice.
This action seeks a declaratory judgment recognizing a servitude of passage in favor of plaintiffs' estate across continguous property which had been owned by plaintiffs' vendor at the time of plaintiffs' acquisition and was later sold to the vendor's son. Naming both the vendor and his son as defendants, plaintiffs also seek to enjoin the son from interfering with their use of the servitude. The issues are (1) whether plaintiffs and their vendor established a conventional servitude which plaintiffs are entitled to enforce against the vendor's son and (2) whether plaintiffs are entitled, as owners of an enclosed estate, to demand a forced passage, with or without indemnity, across the vendor's son's land to the nearest public road.
Facts
In 1964 defendant Robert Farrington, Jr. owned a parcel of ground situated between La. Highway 30 and Bayou Des Familles and described as Plot 69 of Ida Plantation. Farrington proposed to resubdivide a portion of the property into eight lots which fronted on Roblaine Street, a proposed road extending from the highway to the bayou, as shown in the following survey of May 6, 1964:
*267 
Although the parish authorities tentatively approved the proposed resubdivision on February 24, 1965, the proposal was eventually rejected (at a time not disclosed in the record) because of the dead-end street.
On October 18, 1965, plaintiffs signed an agreement to purchase "Lots 2 and 3 of proposed subdivision of Plot 69, Ida Plantation". Farrington accepted the agreement which contained the following condition:
"A further condition is the granting by seller without any restrictions or reservations whatsoever of a perpetual servitude to the buyer of the right to use Rob Lane Street as a means of ingress and egress to the property herein being purchased."
On December 20, 1965, Farrington executed an act of sale conveying Lots 2 and 3 to plaintiffs. The lost were described in accordance with the May 6, 1964 survey, although that resubdivision had never been completed. However, the survey was not attached to the act of sale, and there was no mention in the act of any servitude. Moreover, the act erroneously referred to Lots 2 and 3 as part of original Plot 68 (instead of 69).[1]
On December 21, 1965, Farrington sold Lot 1 to James Fish. The act of sale described Lot 1 in accordance with a November 16, 1964 survey which showed only Lot 1 and the highway. The survey showed that the eastern boundary of Lot 1 coincided with the property line between Plots 68 and 69 of Ida Plantation, but did not show Roblaine Street or indicate that there was a street along the western side of Lot 1.
Shortly after the sale, plaintiffs placed a mobile home on the property and built a *268 garage, with both buildings facing Roblaine Street. They immediately began using Roblaine Street for access from their home to the highway.
Several years later, Farrington applied for approval of a plan of resubdivision of his property in Plot 69 of Ida Plantation in accordance with the following survey:

The resubdivision was approved on January 28, 1971. Plaintiffs were never informed of the resubdivision, although they owned a portion of the property which became Lot 69E, and they continued to use Roblaine Street for access to their home. On March 22, 1973, Lots 69C and 69D of the resubdivided plot were rezoned from residential to commercial at Farrington's request.
On April 23, 1980, Farrington sold Lots 69C and 69D to his son, defendant Robert Farrington, III. The lots were described in accordance with the recorded resubdivision plan that had been approved in 1971. The act of sale recited a cash consideration of $5,000, and Farrington's son declared in the act that he was purchasing the lots as his separate property with separate funds derived as a gift from his father to him. On *269 the very next day, Farrington executed an act of correction, amending the incorrect property description (Plot 68 to Plot 69) in the 1965 deed to plaintiffs.[2]
After Farrington's son took title to Lot 69D, he constructed a fence across the property and sent a letter through his attorney to plaintiffs, advising them to stop using the property for access to their home. Plaintiffs then instituted this action to obtain a declaratory judgment recognizing their right to a servitude of passage and an injunction restraining the obstruction of the servitude.
The trial court rendered a judgment recognizing the servitude on the mistaken basis that the act of sale had granted such a servitude. The court then granted a motion for a new trial and rendered judgment in favor of defendants, finding that a novation had occurred.
The court of appeal affirmed on other grounds. 465 So.2d 763. The court correctly observed that the record did not support a finding that the plaintiffs and Farrington had intended at the time of the act of sale to extinguish Farrington's obligation in the purchase agreement to grant a servitude to plaintiffs for use of Roblaine Street as a means of ingress and egress.[3] However, the court rejected plaintiffs' claim for enforcement of the conventional servitude allegedly established by the provision in the agreement to purchase, because conventional servitudes affecting immovable property must be in writing and must be recorded in order to affect third parties.
The court further denied plaintiffs' claim for a legal servitude of passage on the basis that the public records, at the time of Farrington's sale of Lot 69D to his son, did not show that Lots 2 and 3 constituted an enclosed estate, because of the error in the plot number (Plot 68 instead of Plot 69) and because of the absence of recordation of the May 6, 1964 survey. The court concluded that since it was impossible to determine from the public records that Lots 2 and 3 constituted an enclosed estate, Farrington's son acquired Lot 69D free of any obligation to recognize a legal servitude of passage in favor of plaintiffs. We granted certiorari, primarily to consider whether Farrington's son had a valid defense to a claim for a legal servitude of passage in favor of an enclosed estate on the basis that the public records did not disclose that the estate was enclosed at the time of the acquisition of Lot 69D. 467 So.2d 528.
Conventional Servitude
No conventional servitude was ever established. In the agreement to purchase, Farrington obligated himself as a condition of the sale to grant plaintiffs a servitude to use Roblaine Street for passage to their property, but the grant was omitted from the act of sale which transferred the property.
Contracts affecting immovable property must be recorded in order to affect third parties. La.R.S. 9:2721 and 2756. The public records doctrine is essentially a negative doctrine declaring that what is not recorded is not effective except between the parties, and a third party in purchasing immovable property is entitled to rely on the absence from the public records of any unrecorded interest in the property such as a sale or a grant of a servitude. Phillips v. Parker, 483 So.2d 972 (La.1986). Because recordation is essential for effectiveness against third parties, actual knowledge by third parties of unrecorded interests is immaterial. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909); Redmann, The Louisiana Law of Recordation: Some Principles and Some Problems, 39 Tul.L.Rev. 491 (1965). This principle of the law of registry applies here so that Farrington's son acquired the property free of *270 any conventional servitude, irrespective of any actual knowledge that the father had obligated himself to grant a servitude, since actual knowledge outside the public records is immaterial.[4] A. Yiannopoulos, 4 Louisiana Civil Law TreatisePredial Servitudes § 127 (1983).
Moreover, since Farrington is no longer the owner of the property originally designated as Roblaine Street, plaintiffs can no longer demand specific performance of Farrington's obligation to grant the servitude affecting that property.[5] Perhaps plaintiffs may be entitled to damages from Farrington because of the breach of his personal obligation to grant a conventional servitude, but that relief was not demanded in the trial court. Inasmuch as this issue remains viable after plaintiffs' other demands have been rejected by this decision, the case will be remanded to the trial court to permit plaintiffs to plead and prove any right to damages.[6]
Legal Servitude
A legal servitude is a limitation on ownership imposed by law. La.C.C. Art. 659. The legal servitude of passage in favor of an enclosed estate is a limitation imposed by law on the ownership of lands surrounding the enclosed estate. La.C.C. Art. 689. The law affords the owner of an estate which has no access to a public road the right to demand forced passage across his neighbor's land which offers the shortest and most convenient route to a public road, usually upon payment of indemnity fixed by agreement or by the court. However, if property becomes enclosed because of an alienation of part or all of the remainder of the estate, passage must be furnished gratuitously by the owner of the land over which passage was previously exercised, even if it is not the shortest route to the public road. La.C.C. Art. 694.
The court of appeal held that plaintiffs were not entitled to claim a legal servitude from Farrington's son because the public records at the time of Farrington's son's acquisition did not disclose that Lots 2 and 3 constituted an enclosed estate. We do not agree that the law of registry affects the right of the owner of an estate which is actually enclosed to claim passage across neighboring lands (although conceivably the neighbor's right to defend against a claim for a legal servitude or to obtain indemnity might be affected by the fact that the neighbor's action caused the estate to be enclosed).
At the time of their acquisition, plaintiffs' property was an enclosed estate with no access to a public road at the time of their acquisition. Plaintiffs therefore had the right to demand from Farrington the creation of a gratuitous conventional servitude of passage, since Farrington's sale to them had caused the property sold to become enclosed. La.C.C. Art. 694; A. Yiannopoulous, supra, at § 99. After Farrington sold Lot 69D and was no longer the owner of the property over which plaintiffs *271 had been entitled to demand a conventional servitude under Article 694, plaintiffs were precluded by the public records doctrine from asserting against third persons the right to demand creation of a conventional servitude (just as they would have been precluded from asserting an unrecorded conventional servitude if one had actually been granted by Farrington).[7] Perhaps plaintiffs at that time were entitled to a legal servitude under Article 689 from the owner of one of the surrounding estates, but that question became moot when plaintiffs (by the time of trial) had acquired other access to the public road.
The legal servitude of passage terminates upon termination of the enclavement, as when the owner of the enclosed estate acquires contiguous land that has access to a public road. A. Yiannopoulos, supra, at § 103. See also Perry v. Webb, 21 La.Ann. 247 (1869); Pousson v. Porche, 6 La.Ann. 118 (1851). Because forced passage across a neighbor's land is no longer the only means of access to a public road after such an acquisition, the purpose of the limitation on the ownership of the surrounding lands ceases, and the right to a legal servitude passes out of existence. As this court stated in the Pousson case, even an extreme inconvenience in passing over contiguous property acquired by the owner of the formerly enclosed estate does not warrant forcing a neighbor to yield a passage over his land.
In the present case plaintiffs eventually acquired Lot 1 (originally sold by Farrington to Fish), which was contiguous land having access to the highway. Since plaintiffs' estate after the acquisition of Lot 1 had access to a public road, there was no longer any entitlement to claim a right of passage over neighboring property.
Accordingly, the judgments of the lower courts are affirmed. The case is remanded to the trial court to allow plaintiffs an opportunity to plead and prove any right to damages based on Robert G. Farrington, Jr.'s breach of his obligation to grant plaintiffs a servitude of passage.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., retired, participated in this case ad hoc, in place of COLE, J., the matter having been heard and submitted before COLE, J., replaced BLANCHE, J., on the Court.
MARCUS, Justice (dissenting).
Although the agreement to purchase between Farrington Jr. and plaintiffs was conditioned upon the granting by Farrington to plaintiffs of a servitude of passage, the act of sale was effected without establishing a servitude of passage and any obligation to furnish a conventional servitude of passage was thus terminated. Hence, I dissent from the majority's remand to the trial court to permit plaintiffs to plead and prove any right to damages due to Farrington Jr.'s breach of an obligation to grant a conventional servitude.
NOTES
[1] This error was finally corrected by an act of correction which was recorded on May 13, 1980.
[2] The timing of the act of correction, in relation to the transfer (essentially without consideration) of Lot 69D, is suspicious, because Farrington at first declined to make the corrections. There are strong inferences of collusion to defeat plaintiffs' right to use Roblaine Street for passage.
[3] Indeed Farrington admitted at trial that he had agreed to allow plaintiffs' to use Roblaine Street and had never placed any time limit on this use.
[4] This absolute exclusion of any consideration of actual knowledge often leads to harsh results. A person who sells the same property twice is a scoundrel. When the second purchaser has no knowledge of the first sale, the contest is between two innocent parties, and the law of registry decides the contest against the party who could have protected himself by recording the sale. However, when the second purchaser buys with knowledge of a prior unrecorded sale, the only truly innocent party is the first purchaser, and one could argue persuasively that actual knowledge should be a material consideration. On the other hand, one major consideration in favor of the McDuffie interpretation is that the first purchaser does have the opportunity to protect himself by recordation.

In the present case, plaintiffs did not allege fraud on the part of Farrington's son in obtaining title to Lot 69D for the purpose of defeating Farrington's obligation to grant a servitude, nor did plaintiffs attack the sale from Farrington to his son as simulated.
[5] The court of appeal noted that Farrington's obligation to grant a conventional servitude terminated when the act of sale from Farrington to plaintiffs was passed. Arguably, the obligation continued and could have been enforced by an action for specific performance as long as Farrington owed the property.
[6] Although plaintiffs used Roblaine Street for approximately fifteen years, one could not acquire a servitude (except for a continuous apparent servitude) by prescription before the 1977 amendments to the Civil Code.
[7] Again, there was no pleading asserting a simulated sale and attacking Farrington's son's status as a third person.