614 So.2d 265 (1993)
SIMMESPORT STATE BANK, Plaintiff-Appellee,
v.
Jack R. ROY, et al., Defendants-Appellants.
No. 92-120.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1993.
Writ Denied April 23, 1993.
*266 Rodney M. Rabalais, Marksville, for defendants-appellants Roy, et ux.
Charles A. Riddle, III, Marksville, for defendant-appellee Tanner.
J. Eddie Knoll, Marksville, for plaintiff-appellee.
Before DOMENGEAUX, C.J., and DOUCET and DECUIR, JJ.
DOMENGEAUX, Chief Judge.
Simmesport State Bank filed this action to annul a quitclaim deed which was granted by Leonard R. Tanner and Lucy Tanner to Jack R. Roy and Jean Roy, all of whom were named as defendants. The quitclaim deed purportedly conveyed to the Roys an interest in a piece of land located in Avoyelles Parish. All parties filed motions for summary judgment. The trial judge granted summary judgment in favor of the Bank, declaring the quitclaim deed at issue to be null, void, and of no effect. The trial judge also granted summary judgment in favor of the Tanners, dismissing them from the litigation.
The Roys have appealed the judgment in favor of the Bank, and we affirm the trial court's decision; the judgment in favor of the Tanners has not been appealed.
The record reveals the following undisputed facts. In 1988, the Tanners went into bankruptcy. Simmesport State Bank was one of their creditors. Pursuant to a bankruptcy court order authorizing a trustee's consensual sale, the property at issue was sold to the Bank on September 14, 1988. Officials at the Bank, however, did not record the deed until August 8, 1991, probably through inadvertence.
In May of 1991, the Roys purchased the property at a tax sale. Jack Roy then checked the mortgage and conveyance records and discovered that the Tanners were the record owners of the property. While the tax assessment was still listed under the Tanners' names, the tax records did contain a reference to Simmesport State Bank. (Apparently, the tax notices for 1988, 1989, and 1990 were sent to the Tanners who forwarded them to the Bank. The Bank paid the 1988 and 1989 taxes but neglected to pay the 1990 taxes.) Jack Roy also learned from his research that a mortgage executed by the Tanners in favor of the Bank had been cancelled. When Roy talked to the Tanners, he was told they no longer owned the property because they had lost it to the Bank as a result of their bankruptcy. The Tanners showed Roy the pertinent papers evidencing the trustee's consensual sale.
Roy explained to the Tanners that he was in the process of buying the property for delinquent taxes, and he requested that they execute a quitclaim deed in his favor in exchange for $500.00. The Tanners were reluctant to execute the quitclaim deed, but after making sure they were not doing anything wrong, and were not guaranteeing title to property which they did not own, they decided to execute the deed and accept the $500.00 payment. Roy immediately filed the deed in the Avoyelles Parish conveyance records on August 5, 1991.
On August 7, 1991, Roy informed the Bank that he had purchased the property at a tax sale. Upon reviewing their records for this property, officials at the Bank discovered that the deed from the trustee's consensual sale had never been recorded. *267 The Bank then recorded the deed on August 8, whereupon the quitclaim deed in favor of the Roys was discovered. The Bank successfully redeemed the tax sale and instituted this suit on August 20, 1991, to annul the quitclaim deed.
The Bank asserts ownership of the subject property based upon the well established principle that a quitclaim deed is one which purports to convey, and is understood to convey, nothing more than the interest in the property described of which the grantor is possessed, if any, at the time, rather than the property itself. Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225 (1947). The Bank contends that because the Tanners owned no interest in the property at the time they executed the quitclaim deed, the deed transferred nothing and is essentially null and void.
The Roys assert ownership based on the public records doctrine, codified at La.R.S. 9:2721 and 9:2756, which requires that all contracts affecting immovable property must be recorded in order to affect third parties. The Roys cite Dallas v. Farrington, 490 So.2d 265 (La.1986) for the long established rule that because recordation is essential for effectiveness against third parties, actual knowledge by third parties of unrecorded interests is immaterial. 490 So.2d at 269, citing McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909).
The issue before us, as the trial judge pointed out in his well reasoned oral opinion, which was transcribed, is how the law applicable to quitclaim deeds is affected by the public records doctrine. In other words, in applying the law that a vendor in a quitclaim deed sells only that interest which the vendor owns at the time of the sale, a determination must be made as to what the vendor owned, but is that determination restricted to what is contained in the public records? Or can the determination be based on facts outside of the public records?
There is no question in the present case that the trustee's sale was a valid transfer of property between the Tanners and the Bank. There is also no question that the sale could have no effect on third parties until it was recorded three years after the fact in 1991. But what effect does an unrecorded sale have on a quitclaim deed which, by its very nature, transfers only an interest in property, not the property itself? The trial judge held that what is contained in the public records is not determinative of the interest held by a vendor to a quitclaim deed. He found that an unrecorded sale has the same effect as a recorded sale on the validity of a quitclaim deed. The Tanners, therefore, had no interest in the property at the time they executed the deed.
We find the trial judge's analysis to be correct. There is nothing in the jurisprudence which requires that a determination of the interest held by a vendor to a quitclaim deed must depend on what is contained in the public records. The Tanners lost their interest in the subject property when it was sold to the Bank. Therefore, they had no interest to convey when they executed the quitclaim deed. We agree with the century old case of Benton v. Sentell, 50 La.Ann. 869, 24 So. 297 (1898), which stated:
We think that a quitclaim deed reaches only to interests actually owned at that time by the party executing it; that it is of no effect whatever as to interests already gone. In the very nature of things, there is a great difference between an act of sale or donation and a quitclaim deed. It is true that through the latter interests in property may be acquired, for the party quitclaiming is ordinarily estopped from subsequently asserting rights which had been by him relinquished. A person undertaking to sell warrants the existence of and his ownership of the thing sold, and is bound to make the warranty good, but a party quitclaiming, carries out precisely what he undertook to do in simply abstaining from disturbing or questioning the rights of those in whose favor he has renounced.
24 So. at 301.
In this appeal, the Roys argue that a decision affirming the trial court's judgment *268 would serve only to imperil or erode the public records doctrine. This argument is without merit. Our decision is based on the unique characteristics of a quitclaim deed and its inherent independence from what is contained in the public records. Indeed, more often than not, a quitclaim deed is obtained from persons who are not record owners, but who may have an ownership interest nonetheless. In order to protect himself from the uncertainty of the situation, such a vendor will transfer whatever interest he has, but only without any warranty of title. Hence, the quitclaim deed is utilized.
The Roys' reliance on the rule that unrecorded transfers of immovable property cannot affect third parties is misplaced. The focus, instead, must be on the deed which the Roys hold; it is a deed that contains no warranty of title and transfers nothing but an interest in property, the ownership of which had previously been lost. The purported interest, therefore, is nonexistent, and the deed itself is null and void and of no effect. There are many instances where a quitclaim deed does constitute a valid transfer of property because the vendor does, in fact, own an interest which can be transferred. See, Osborn v. Johnston, 322 So.2d 112 (La.1975); Clifton v. Liner, 552 So.2d 407 (La.App. 1st Cir. 1989); Sabourin v. Jilek, 128 So.2d 698 (La.App. 4th Cir.1961); Armstrong v. Bates, 61 So.2d 466 (La.App. 1st Cir.1952). This, however, is not such a case, and we therefore affirm the trial court's ruling.
Finally, we note that in the instant case, both the vendor and the vendee to the quitclaim deed knew of the trustee's consensual sale to the Bank. Further, the vendee knew that sale had not been recorded. The vendee attempted to take advantage of the situation by obtaining a quitclaim deed. The questions of fraud and bad faith are relevant generally to a determination of whether a third party purchaser is entitled to the protection afforded by the public records doctrine. American Legion v. Morel, 577 So.2d 346 (La.App. 1st Cir.1991), writ denied, 580 So.2d 924 (La. 1991). However, in the instant case, the question of fraud is not before us as the Bank did not allege fraud and the trial court pointed out that he was not making a finding of fraud. Our decision likewise is not based on any finding of fraud or bad faith, but rather, on the conclusion that the law governing quitclaim deeds does not support the position advocated by the Roys.
For the foregoing reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.