918 So.2d 52 (2005)
Kenneth and Donna BARNHILL, William H. and Barbara A. Barnhill, Alan M. Barrosse and Kerry McGee, Grace M. Barrosse, Guy W. and Edith B. Ridgel, Gerard J. Cortese, Sr., George D. and Niki A. Dargis, Sr., Fred and Linda Eisenmann, et al.
v.
REMINGTON OIL AND GAS CORP., Cedar Bayou, L.L.C., and Kenneth M. Carter, Individually.
No. 2004-CA-0725.
Court of Appeal of Louisiana, Fourth Circuit.
August 10, 2005.
Rehearing Denied December 9, 2005.
*54 Stephen K. Conroy, Christine W. Marks, Conroy Law Firm, PLC, Metairie, LA, for Plaintiffs/Appellants.
Terrel J. Broussard, Jason A. Cavignac, Eugene J. Radcliff, Montgomery Barnett Brown Read Hammond & Mintz, L.L.P., and Maury A. Herman, Steven J. Lane, Herman, Herman, Katz & Cotlar, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS JR.).
MICHAEL E. KIRBY, Judge.
Plaintiffs appeal a judgment in defendants' favor granting an Exception of No Cause of Action. After conducting a de novo review, we find plaintiffs' petition does not state a cause of action and therefore affirm.

STATEMENT OF THE CASE:
On December 13, 2002 numerous plaintiffs, as lessees of certain lots on Brazellier Island in Orleans Parish, sued Remington Oil and Gas Corporation, (Remington) the former owner of the Island, Cedar Bayou, L.L.C. (Cedar Bayou), the present owner, and Kenneth M. Carter (Carter), one of the two members of Cedar Bayou and a former attorney for Remington. In the prayer of their petition plaintiffs asked for a judgment declaring the rights of plaintiffs *55 and interpreting certain contracts; rescinding Remington's sale of the Island to Cedar Bayou; enforcing the right of first refusal allegedly granted to plaintiffs in certain leases, thereby allowing plaintiffs to purchase the property; and, monetary damages.
Subsequently, on January 14, 2003 plaintiffs deposited into the registry of court, under protest and with a full reservation of rights, funds totaling $33,700.00 representing rents demanded by Cedar Bayou. Thereafter, on February 10, 2003 plaintiffs sought and obtained a temporary restraining order restraining Cedar Bayou and Carter from evicting plaintiffs from their home sites and from interfering with the peaceful possession of their leased property. At the hearing on the preliminary injunction the parties reached an agreement whereby the plaintiffs withdrew their request for injunctive relief; rents for certain specified months were paid from funds in the registry of the court and the balance was held in the plaintiffs' counsel's trust account; upon receipt of the funds, Cedar Bayou would withdraw its notices of eviction.
On February 28, 2003 Cedar Bayou and Carter filed Exceptions of No Cause and No Right of Action to the original petition. The Exception of No Right of Action was withdrawn on March 20, 2003. The Exception of No Cause of Action was based upon the fact that the plaintiffs' leases were not recorded and thus not binding on third-party purchasers. The Court heard and granted the Exception of No Cause of Action on March 28, 2003, indicating in oral reasons that she relied on the public records doctrine and the "third-party" status of Cedar Bayou and Carter. A written judgment was signed on April 8, 2003 and this appeal followed.

EXCEPTION OF NO CAUSE OF ACTION:
The peremptory Exception of No Cause of Action is used to determine whether the law extends a remedy to anyone against the defendant under the facts alleged in the petition. It tests the legal sufficiency of the petition by determining whether a particular plaintiff is afforded a remedy at law based upon the allegations of the petition. The exception is tried on the face of the petition. In determining whether the plaintiff has a remedy under the law, the well pleaded facts in the petition must be accepted as true. In reviewing a judgment sustaining an Exception of No Cause of Action the appellate court should conduct a de novo review since the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition. A petition should not be dismissed on an Exception of No Cause of Action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. See Industrial Companies, Inc. v. Durbin, XXXX-XXXX, pp. 6-7 (La.1/28/03), 837 So.2d 1207, 1213 and the cases cited therein.

FACTS:
The following facts alleged in the petition and its exhibits are paraphrased and assumed to be true:
Box Energy Corporation (Box) acquired Brazellier Island long ago. Box leased certain lots on the Island to the plaintiffs. As an inducement to enter into the leases, plaintiffs were verbally and in writing guaranteed a right of first refusal for each of their respective lots in the event Box ever decided to sell them. The leases along with the right of first refusal were renewed annually. Plaintiffs made improvements to their lots and have been responsible for upkeep, maintenance, repair, *56 and insurance on them. Most of the plaintiffs live on their lots as their primary residence, claiming them as their domicile for voting purposes and paying property taxes thereon. By letter agreement of February 16, 1995, Box renewed and extended the lease terms, but modified the lease by granting to each lessee "a right of first refusal for the respective tract occupied by each lessee, thereby memorializing the promises made all along."
In August 1997 an Idaho-based corporation acquired a controlling interest in Box and changed its name to Remington. Remington, through it agents and representatives, promised and represented that plaintiffs would always have a right of first refusal in the event it decided to sell the property.
Until recently Carter was the attorney for Remington. Prior to the purchase he reviewed the documents related to the property. His limited liability company, Cedar Bayou, then bought the property with actual knowledge of the leases and the right of first refusal in favor of plaintiffs.
By letter of December 12, 1997 Box notified plaintiffs their leases would be renewed and by letter of November 13, 1998 plaintiffs were again assured that "... if the time ever comes to sell the lots to each of you, the lots will have to be surveyed...." By letter of January 25, 2001 plaintiffs were advised their leases would be renewed for an additional one-year term and that "the full terms and conditions of the original lease, and all executed modifications thereto, hereby apply to the renewal term."
By credit sale of December 13, 2001 Remington sold Brazellier Island to Cedar Bayou for $150,000.00 with a $20,000.00 down payment. This sale occurred without any notice to the plaintiffs, who were not afforded a right of first refusal. The credit sale is alleged to contain a third-party stipulation in favor of the plaintiffs whereby Cedar Bayou shall not, without Remington's "written consent, assign any of the rents or profits of the premises or change the general nature of the occupancy. . . ."
On December 29, 2001 Cedar Bayou notified the plaintiffs that it understood that some lessees had expressed an interest in purchasing their lots through outright purchase or right of first refusal. The letter stated that Remington could not have sold the lots to them without an approved sewerage disposal facility and that Cedar Bayou would only consider individual sales, including rights of first refusal, at that time. However, plaintiffs allege that Remington could have quit-claimed their lots to them without an approved subdivision and without an approved sewerage disposal facility. Additionally, plaintiffs signed leases attached to the December 29, 2001 letter not knowing Carter, through his company, was the purchaser. They believed, and were led to believe, that their right of first refusal was being preserved.
At a June 19, 2002 tenants' meeting on the Island with some of the tenants, Carter informed them that he learned the property was for sale through his work as the attorney for Remington. Plaintiffs thus aver the sale from Remington to Cedar Bayou was not an arms' length transaction but an insider deal that violated plaintiffs' rights to have the first chance to buy the land under their homes. Then, on June 21, 2002 Carter wrote plaintiffs stating he would "consider giving each lease holder an opportunity to lease or buy a subdivided lot, on a case by case basis at the company's discretion." Plaintiffs thus claim the general nature of their occupancy was changed since they were no longer guaranteed the right of first refusal to buy their lots.
*57 There is no allegation in the petition regarding whether or not the leases are recorded of public record.

ASSIGNMENT OF ERRORS:
Plaintiffs assign two errors on the part of the trial court: (1) the trial court erred in granting the Exceptions of No Cause of Action filed by Cedar Bayou and Carter, individually; (2) the trial court erred in holding that the Public Records Doctrine applied and barred all causes of action.

DISCUSSION
Plaintiffs contend that even if the leases were not recorded (which they do not concede) the public records doctrine is not absolute and does not apply to this case because Cedar Bayou assumed the leases in the act of sale.
In support of their assertion that Cedar Bayou assumed the leases, plaintiffs refer to language in the credit sale to the effect that Cedar Bayou is entitled to the rents and profits from the premises under "leases and tenancies now existing . . ." so long as it is not in default of the credit sale. Plaintiffs also refer to language wherein Cedar Bayou agrees, or shall require the tenants, to keep the buildings insured and to pay all tax assessments. Another provision requires Cedar Bayou to notify tenants to maintain the premises in good condition and repair. Finally, plaintiffs rely on language that says Cedar Bayou "shall not, without first obtaining [Remington's] written consent, assign any of the rents or profits of the premises or change the general nature of the occupancy ...." for the proposition that Cedar Bayou assumed the leases at issue.
We find these arguments unpersuasive. Civil Code art. 1821 provides that an obligor and a third person may agree that the third person will assume the obligor's obligation. However, that article further provides, "to be enforceable by the obligee against the third person, the agreement must be made in writing." In Eastman Kodak Co. v. Latter & Blum, Inc., 578 So.2d 1004 (La.App. 4 Cir.1991) we had occasion to apply this article. There Eastman Kodak leased a copy machine to Latter & Blum for a three-year period beginning in September of 1983. Thereafter, on April 1, 1985 the parties executed a superseding three-year lease on the machine. Subsequently a third person bought certain divisions and assets of Latter & Blum and changed its name. Pursuant to their agreement, the new company temporarily retained possession of the subject copier. When the new company abandoned the copier, Eastman Kodak repossessed it and filed suit against the new owner under the lease. Eastman Kodak relied upon language in the agreement between Latter & Blum and the purchaser whereby Latter & Blum sold and the purchaser acquired "all of the assets used in the Purchased Divisions, including ... other assets listed and described below...." Described below, under the heading of "Contractual Rights," the purchaser acquired all of Latter & Blum's rights under a contract with Eastman Kodak for the subject copier covering the three-year period from September 15, 1983 to September 14, 1986. Eastman Kodak contended that by this language the purchaser assumed all of the obligations in favor of Eastman Kodak under the subsequent, superseding contract of April 1, 1985. This court disagreed, relying on Civil Code Art. 1821. It found the language to be no more than a transfer of the machine to defendants and that nowhere in the agreement was there an assumption by the defendants of the contractual obligations.
We find the same result should obtain here. Nowhere have we found language in the credit sale, and we have not been cited to any, that indicates an intent by, or *58 an obligation upon, Cedar Bayou to assume Remington's obligations as to the subject leases. The language that plaintiffs refer us to in the credit sale occurs in the section of the instrument dealing with the security for the vendor's lien and mortgage given by Cedar Bayou to Remington. We read these provisions to relate only to mortgage and security issues. As in Eastman Kodak, supra, absent clear and unambiguous language manifesting the parties' intent to effect an assumption by Cedar Bayou of Remington's obligations under the subject leases we cannot find an assumption occurred.
The plaintiffs' reliance upon Avenue Plaza L.L.C. v. Falgoust, 95-0380 (La.App. 4 Cir. 10/26/95), 663 So.2d 841 (hereinafter referred to as "Avenue Plaza II") is misplaced. First, we note the decision was reversed by the Louisiana Supreme Court on res judicata grounds because Falgoust's eviction had previously been affirmed by this court in Avenue Plaza, L.L.C. v. Falgoust, 654 So.2d 838 (La.App. 4 Cir.1995) [Avenue Plaza I] on lease recordation/public records grounds and the Supreme Court had denied writs. See: Avenue Plaza L.L.C. v. Falgoust 96-0173 (La.7/2/96), 676 So.2d 1077 (Avenue Plaza III). Secondly, in Avenue Plaza II there had been an express assumption of the Falgoust lease, even though it had expired upon its face and the exercise of the option to renew had not been recorded in the public records. For a similar factual situation see: Restaurant Indigo, Inc. v. Thompson, 98-2704 (La.App. 4 Cir 5/19/99), 733 So.2d 1271. As we have found there was no assumption of the plaintiffs' leases here, Avenue Plaza II's rationale is inapposite to the facts of this case even if it survives the Supreme Court's reversal in Avenue Plaza III.
This brings us to a discussion of the Public Records Doctrine as it applies to this case.

PUBLIC RECORDS DOCTRINE
The public records doctrine is contained in LSA  R.S. 9:2721:
2721. Filing in office of parish recorder
A. No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease, or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated. Neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.
* * *
C. Anyone who acquires immovable property in this state, whether by sale, sheriff's sale, giving in payment, or in any other manner, which property is subject to a recorded lease agreement that is not divested by the acquisition, shall take the property subject to all of the provisions of the lease, including any provision for the payment of a commission to a leasing agent or other third party, provided that the lease was recorded prior to the recordation of the document which establishes the rights of the person who acquires the property. Such document shall include but is not limited to a mortgage, option to purchase, or other writing.
The public records doctrine has long been a part of the jurisprudence of this state. McDuffie v. Walker, 125 La. 152, 51 So. 100 (La.1909). Essentially the doctrine means that a third party is entitled to rely on the absence of a document from the public records. See A.N. Yiannopoulos, *59 Louisiana Civil Law Practice: Property, Vol. 2, § 226, p. 438 (West 2001) and Dallas v. Farrington, 490 So.2d 265, 269 (La.1986). As we noted in Restaurant Indigo, supra, 733 So.2d at 1273, "[N]o lease affecting immovable property is binding on or affects third parties until it is filed for registry in the office of the parish recorder ... If not recorded, such a lease is binding upon the two parties, but null and void so far as third parties are concerned." See also Avenue Plaza I, supra, 654 So.2d at 839 and Dallas v. Farrington, supra, 490 So.2d at 269. The settled jurisprudence of this state establishes that actual knowledge of an unrecorded interest in immovable property does not negate the third party's right to rely on the absence of a document from the public records. Avenue Plaza I, supra; Dallas v. Farrington, supra; Marina Enterprises v. Ahoy Marine Services, 496 So.2d 1080 (La.App. 4 Cir.1986).
There is no question that Cedar Bayou was a third party to the transaction between plaintiffs and Remington. La. Civil Code art. 3506(32) defines "Third Persons" as all who are not parties to a contract. It is undisputed that neither Carter nor Cedar Bayou are parties to the contracts.
In light of this jurisprudence, we conclude that in order to state a cause of action against Cedar Bayou and Carter, plaintiffs must have alleged that the leases were recorded. Failure to have done so is fatal to their cause of action.

STIPULATION POUR AUTRUI
La. Civil Code art.1978 provides the basis for plaintiffs' argument that they are third party beneficiaries of the sales contract between Remington and Cedar Bayou. It provides, in pertinent part: "A contracting party may stipulate a benefit for a third person called a third party beneficiary." Plaintiffs rely upon the language in the credit sale that Cedar Bayou will not change the general nature of the occupancy without Remington's consent as the stipulation in their favor.
We have already noted above that the language plaintiffs rely upon is in that part of the credit sale dealing with the vendor's lien and mortgage in favor of Remington. As such we construe it to confer a benefit upon Remington as the vendor/mortgagor, not upon the plaintiffs as third parties. Thus, as a matter of law plaintiffs have no rights under La. Civil Code art.1978.

PLAINTIFFS' RIGHTS AGAINST CARTER PERSONALLY
Plaintiffs contend in brief that they state a cause of action against Carter personally "for fraud and civil conspiracy, among other things." They base these contentions on the fact that they allege in the pleadings that prior to the credit sale Carter was Remington's attorney; that he reviewed the subject leases and documents related to the property; and, that Carter's company then purchased the property "with actual knowledge of the leases and rights of first refusal."
La. Civil Code art.1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may result from silence or inaction."
Louisiana law does not permit a plaintiff to plead fraud generally La. C.C.P. art. 856 mandates that "the circumstances constituting fraud or mistake shall be alleged with particularity." We have carefully reviewed plaintiffs' petition relating to the allegations of fraud. We are unable to find in those pleadings any allegation that Carter in connection with the purchase of the premises, misrepresented or suppressed the truth or that he was silent or inactive when he should have acted otherwise. *60 It follows, then, that plaintiffs have failed to allege an essential allegation of fraud. For that reason there was no error on the part of the Court below in sustaining the exception of no cause of action.
Plaintiffs aver they have stated a cause of action for civil conspiracy. La. Civil Code art. 2324 provides that "[H]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person for the damage caused by such act." Our Supreme Court has said, however, that this article does not by itself impose liability for a civil conspiracy. Ross v. Conoco, Inc., XXXX-XXXX (La.10/15/02), 828 So.2d 546, 552. Citing Butz v. Lynch, 97-2166, p. 6 (La.App. 1 Cir. 4/8/98), 710 So.2d 1171, 1174, it noted that the conspiracy by itself was not the actional claim under La. Civil Code art. 2324. Rather, it is the underlying tort the conspirators agree to perpetrate and actually accomplish, either fully or partially, that constitutes the actionable element of the claim.
Here we find no allegation in the pleadings identifying the tort plaintiffs claimed Carter and Remington conspired to perpetrate upon them. As noted above, they have not stated a cause of action based upon contract.
Since we have found that Carter and Cedar Bayou are third parties to the contracts between plaintiffs and Remington and that Cedar Bayou did not assume those contracts it is not necessary for us to consider Carter and Cedar Bayou's contentions that there was no right of first refusal or that it was only valid for the 1997 calendar year.
Plaintiffs aver that they have stated a cause of action for the application of the equitable doctrine of judicial control of leases. We find it unnecessary to reach this issue, however, in this appeal. We have already found Cedar Bayou to be a third party to the subject leases and that it did not assume them when it purchased the premises from Remington. We express no opinion as to the viability of this argument as it may relate to plaintiffs' claims against Remington.

CONCLUSION
For the reasons stated herein we affirm the judgment appealed from.
AFFIRMED.

*61 LOUISIANA DECISIONS WITHOUT PUBLISHED OPINIONS