BROWN, Chief Judge.
|! Plaintiff, Amanda Fontenot Mathews, brought this action to reform a cash sale deed to include a mineral reservation. Finding mutual error, the trial court reformed the cash sale deed to include a mineral reservation in favor of plaintiff. Defendant, Jennifer Lynn Emerson O’Brien Duke, has appealed. We affirm.

Facts

Amanda purchased a two-acre lot next to one owned by her mother in the Woolworth subdivision in DeSoto Parish, Louisiana.[1] On February 20, 2004, plaintiff *348 executed a mineral lease, with a no surface operations clause, with JPD Energy, Inc. A pooled unit was created, and producing wells were drilled in the unit at the Cotton Valley level. Amanda received royalties regularly which she used to pay her house note. Also, because she was at school, she rented the house.
In September of 2006, Amanda listed the property with Realty Executives and wrote on the listing agreement “mineral rights reserved.” The official MLS listing showed that the mineral rights were to be reserved. Defendant purchased the property as her separate and paraphernal property on April 24, 2007.[2] The deed made no mention of a mineral reservation. Prior to the purchase, plaintiff executed a “property disclosure document for residential real estate.” This disclosure statement consisted of seven pages and included a paragraph with two check marks signifying “rights vested [ ¿with others.” An explanatory notation at the bottom of the page contained the writing “pipeline runs through property, mineral rights reserved-long term lease.” On April 3, 2007, both plaintiff and defendant initialed the bottom of each page of the seven-page disclosure statement and signed on the last page. Thereafter, defendant’s realtor drafted an offer, in the form of a buy/sell agreement, to purchase the property for less than the listed price. The property was listed for $125,000 with a mineral reservation. Defendant’s offer was for $113,500. Defendant signed the offer on April 3, 2007, and Amanda accepted it on April 4, 2007. Although the buy/sell agreement did not mention a mineral reservation, it did contain wording that the “purchaser does acknowledge receipt of the seller’s property condition statement.” As stated, the disclosure statement included the wording “mineral rights reserved-long term lease.”
At closing, plaintiff was presented with a cash sale deed drafted pursuant to defendant’s realtor’s instructions. Admittedly plaintiff did not read the deed; however, Amanda specifically asked whether her minerals were reserved. Her realtor and the closing agent (in brief defendant refers to a “closing attorney”) assured plaintiff that the minerals were reserved. The closing agent/attorney did not testify at trial. At trial neither defendant nor defendant’s realtor could remember whether the minerals were discussed.
Plaintiffs mother testified that she was involved in the process, except that she was not present when the deed was executed. She testified, as did plaintiffs realtor, that the minerals were to be reserved was clearly stated to everyone and that no one objected to or questioned this reservation.
laFor approximately two years after the sale, Amanda continued to receive the mineral royalties without resistance or objection from defendant. In her testimony, defendant indicated that she could see the wells from the back of her house. At no time, until after being contacted by plaintiff, did Jennifer assert ownership of the minerals.
In the summer of 2008, the Haynesville Shale came into play and issues arose concerning the deeper mineral rights below the Cotton Valley formation.[3] At this *349 time, plaintiff learned that the deed did not include a mineral reservation. Amanda and her mother contacted defendant by phone and informed defendant of the error. In that conversation Jennifer expressed concern about a possible right-of-access across the property. At trial Jennifer did not recall these conversations. Plaintiff sent a Mend, Chris Procell, who was a landman, to speak with defendant to explain the process if access was sought. Procell also brought an act of correction concerning the minerals. According to Procell, Jennifer admitted that the minerals were to be reserved but this reservation did not get into the deed.
Defendant sent the document to her mother who worked for a law firm in New Orleans. After hearing from her mother, Jennifer refused to sign the act of correction and claimed ownership of the minerals. Plaintiff then filed suit seeking reformation of the deed. At the conclusion of trial, the district court took the matter under advisement and later issued a lengthy and well-reasoned written opinion. The trial court found that plaintiff met her burden of proving that mutual error existed between the two parties at the time the |4cash sale deed was executed. The court ruled that plaintiff was entitled to reform the deed to provide for a mineral reservation in her favor. Defendant filed this appeal.
Discussion
Under the manifest error standard of review, a court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Snider v. Louisiana Medical Mutual Insurance Co., 13-0579 (La.12/10/13), 130 So.3d 922; Rosell v. ESCO, 549 So.2d 840 (La.1989). Under this standard, determinations of fact are entitled to great deference on review. McGlothlin v. Christus St. Patrick Hospital, 10-2775 (La.07/01/11), 65 So.3d 1218; Guillory v. Lee, 09-0075 (La.06/26/09), 16 So.3d 1104.
[T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
Guillory, 16 So.3d at 1116-17 (quoting Perkins v. Entergy Corp., 00-1372 (La.03/23/01), 782 So.2d 606). An appellate court in reviewing factual conclusions must satisfy a two-step process on the record as a whole: there must be no reasonable factual basis for the trier of fact’s conclusion, and the finding must be clearly wrong. McGlothlin, supra.
With these principles in mind, we will review the evidence in the record to determine whether the trial court’s factual conclusions regarding | ^mutual error are unsupported by a reasonable factual basis and if so, whether these findings are clearly wrong or manifestly erroneous.
La. C.C. art. 1949 provides:
Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.
*350 As reflected in our jurisprudence and codified in the 1984 Revision of the Civil Code’s articles on Obligations, error, which vitiates consent, can manifest itself in two ways: mutually, i.e., both parties are mistaken, or unilaterally, i.e., only one party is mistaken. However, in both situations, the error for which relief may be granted must affect the cause of the obligation, and the other party must know or should have known “the matter affected by error was the cause of the obligation for the party in error; that is, that it was the reason he consented to bind himself.” See Revision Comments (b) and (c) to La. C.C. art. 1949.
The granting of relief for error presents no problem when both parties are in error, that is, when the error is bilateral. When that is the case the contract may be rescinded. As an alternative, the instrument that contains the contract may be reformed in order to reflect the true intent of the parties. As observed by the supreme court in Peironnet v. Matador Resources Co. 12-2292, p. 13 (La.06/28/13), 2013 WL 3752474, 144 So.3d 791, 804:
When a contract is reduced to writing, an error may occur in the drafting of the instrument so that the written text does not reflect the true intention of the parties. When such is the case, upon proof that the error is mutual, that is, that neither party intended the contract to be as reflected in the writing, the court may decree the reformation of the written instrument, rather than the rescission of the contract, so that the writing, once reformed, will express the parties’ true intention.
Inin the view expressed by Louisiana courts, an action to reform a written instrument is an equitable remedy, and it lies only to correct errors in a written instrument that does not express the true agreement of the parties ...
... An action to reform a written instrument is a personal action, even when applied to real estate, and the burden of establishing the mutual error by clear and convincing proof rests on the party seeking reformation.
Litvinoff, Vices of Consent, Error, Fraud, Duress and an Epilogue on Lesion, 50 La.L.Rev. 1, 45-46 (1989)(foot-notes omitted).
Unlike reformation, which is only available upon mutual error for the explicit purpose of reforming an instrument to reflect the true intent of both parties, rescission is a remedy available for both forms of error. Peironnet, supra. Our Civil Code specifically allows for rescission for unilateral error, providing the party who obtains rescission on grounds of his own error is liable for the loss thereby sustained by the other party unless the latter knew or should have known of the error. La. C.C. art. 1952.
In the case of an unilateral error, to determine whether to grant rescission, our courts have considered “whether the error was excusable or inexcusable, a distinction received by modern civilian doctrine,” granting relief when error has been found excusable. Peironnet, supra at 14, 144 So.3d at 810; Franklin v. Camterra Resources Partners, Inc., 48,021 (La.App.2d Cir.05/22/13), 123 So.3d 184.
This court concurs with the trial court’s finding that plaintiff consistently expressed her intent to reserve the mineral rights. Evidence of this communication is contained in the MLS listing notifying potential buyers, as well as the property disclosure statement. Even the buy/sell agreement references the disclosure statement. The buy/sell agreement was |7a counteroffer dealing only with the price. The listing by plaintiff reflected a price for the property without the minerals. As the trial court stated, “It is noted that the final *351 purchase price (allegedly with the minerals) was less than the asking price (without the minerals). In other words, defendant got more by paying less.” The mineral reservation clearly concerned a cause without which the obligation would not have been incurred. La. C.C. art. 1949.
This case presented a factual question, i.e., was there mutual error? The trial court answered this affirmatively. The trial court found plaintiff and her witnesses to be credible, while it found defendant and defendant’s realtor to be equivocal. The overwhelming evidence supports that conclusion. Plaintiff was a student, a single women, who was receiving royalties from her minerals. She had no intention of giving up the minerals or the income derived therefrom. Defendant and her realtor clearly understood plaintiffs intent. Following the sale of the surface, plaintiff continued to receive the royalties for approximately two years uninterrupted and without objection by defendant, who knew that the wells were there and were producing. Defendant admitted as much to Pro-cell.
The trial court wrote, “As noted above, the court finds that the evidence showed that neither Ms. Mathews [n]or Ms. Duke intended a mineral transfer ... [A]s such, to deny reformation would be to deny the truth of the matter.” This record contains a reasonable factual basis for the trial court’s factual conclusions, which are neither clearly wrong nor manifestly erroneous. See Guillory, supra; McGlothlin, supra. Under the particular and unique circumstances of this case, we affirm.
| ¿Conclusion
For the reasons stated above, the trial court’s judgment granting reformation of the cash sale deed is affirmed at defendant’s cost.
MOORE, J., dissents with written reasons.
WILLIAMS, J., dissents for the reasons assigned by MOORE, J.

. When all the documents in this case were executed, Amanda was not yet married and *348 she signed as Amanda Shantal Fontenot, a single woman.

. Jennifer’s husband, Kevin Duke, was also named as a defendant, but he had no ownership interest in the property. He signed the deed with the statement that the property was her separate property and paid for from her separate funds.

. The lease provided that at the expiration of the lease term upon cessation of drilling for 90 consecutive days the lease will terminate *349 except to a depth of 100 feet below the deepest zone drilled.